TRACY v. BIRI

———

(July 1, 1930. Opinion and Decree.)
(July 25, 1930. Rehearing Refused.)

———

126

Edward R. Schowalter and Solomon S. Goldman, of New Orleans, attorneys for plaintiff, appellee.

Martin H. Manion, John H. Hammel, Jr., and Thos. J. Dobbins, of New Orleans, attorneys for defendant, appellant.

HIGGINS, J. This is a suit to recover the sum of $1,400, commission alleged to be due as a result of the sale of a piece of real estate in this city. The petition alleges that on September 30, 1926, plaintiff and defendant entered into a written contract whereby the defendant employed and designated the plaintiff as sole and exclusive agent to sell the premises No. 402 Hagan avenue and to pay 4 per cent. commission on the gross purchase price; that the contract was to endure for a period of 120 days from the date of its execution, and thereafter until terminated by 5 days' written notice by the defendant to the plaintiff; that on March 30, 1928, the defendant sold the property to the Standard Oil Company for $35,000, which sale was effected during the term of the said contract of employment as a result of the direct and indirect efforts of plaintiff under his contract; that defendant did not give plaintiff, up to and including the date of the sale, the 5 days' written notice to terminate the contract as provided therein; that, after the contract of employment was entered into, plaintiff sought to obtain a purchaser of the property, and negotiated with several oil companies, including the Standard Oil Company, for the purchase of the property, and that plaintiff is not generally engaged in the real estate business.

Defendant admits that the agreement was entered into and that the property was sold for $35,000 to the Standard Oil Company, but denies liability on the following grounds, to-wit:

First. That the contract was to be only for a period of 120 days, and that any provision requiring 5 days' written notice to terminate it was fraudulently placed in the contract.

Second. That during February, 1927, the contract sued upon was verbally canceled by mutual consent of the parties to it.

Third. That on March 15, 1927, written notice as required by the provisions of the contract for its termination was mailed to the plaintiff by the agent of defendant.

Fourth. That on February 16, 1928, defendant entered into a contract of employment with I. B. Rennyson, a duly qualified real estate agent in this city, who listed and sold the property on February 23, 1928, to the Standard Oil Company for the sum of $35,000, the act of sale being passed on March 30, 1928, and that the sale was made solely and only through the efforts of the office of I. B. Rennyson,

and that the plaintiff did not directly or indirectly assist in procuring the said purchaser.

The defendant also filed an exception of no cause of action, which was urged when the plaintiff's witness, Mr. Norman F. De Reyna, a real estate broker, testified that the plaintiff had enlisted his assistance in attempting to dispose of real estate on several occasions, on the ground that the plaintiff was not a licensed real estate salesman or broker, and that section 19 of Act No. 236 of 1920 prohibited plaintiff from recovering through the courts of this state the alleged commission. The exception was referred to the merits.

There was judgment in favor of the plaintiff as prayed for, and the defendant has appealed.

The contract sued upon reads as follows:

"I hereby employ James J. Tracy as my sole agent and give him the sole and exclusive right to sell or lease, as such agent, for the period of 120 days and thereafter until terminated by five days' written notice from me, to sell, lease or assist in selling, or leasing the following described real estate, to-wit:

"Property located at 402 S. Hagan Ave. (Oil station complete).

"Said above described property to be sold for not less than $33,000.00, U. S. Currency, or leased at a monthly rental for a period of fifteen or more years, of $300.00, U. S. Currency.

"And I hereby agree and bind myself, on demand, to convey said real estate, by warranty deed, with merchantable title, free from all encumbrances to any purchaser therefor by said agent upon the price and terms above set forth; or, should the said agent secure a lessee on the terms aforesaid, I hereby agree and bind myself to execute a formal, written lease therefor.

"And I hereby agree and bind myself on demand to pay to said agent out of the first purchase money paid on said real estate, on sale as above being effected directly or indirectly for the services in securing such a purchaser a commission of 4 per cent of the gross purchase price; or, should such above described property be leased a commission equal to five per centum of the rental to be realized from the entire lease.

"Signed in the presence of the witnesses whose names are hereto subscribed, this 30 day of September, 1926.

"Nicholas Biri
"James J. Tracy

"Witnesses:
"A. S. Cain, Jr.
"John B. Murphy.
"Sale price $33,000.00
"Lease $300.00 per month.
"Will not sell for less than $33,000.00 Net to myself."

The record shows that the contract was entered into and signed on September 30, 1926, and that the plaintiff recorded it in the conveyance office of the parish of Orleans on December 9, 1926; that the plaintiff was not a licensed real estate salesman or broker, but was engaged in the general adjustment and collection business, and was attending law school; that he lived in the neighborhood where the defendant operated a gas and oil station on Banks street and Hagan avenue; ·that the defendant is uneducated; that he bought the property in question some 15 years .ago, and was living on the premises and operating a gas service station in the front of it; that defendant desired to sell the property for $33,000 net to himself; and that the plaintiff agreed to sell it for defendant, and that the above contract was entered into between them.

The plaintiff says that he did not advertise the property for sale, and that this is the only transaction of its kind that he ever handled. His efforts to dispose of the property consist of a conversation he had with Mr. James, who was connected with the Gulf Refining Company in the Maison Blanche building. Nothing grew out of this meeting.

The plaintiff also enlisted the assistance of Norman F. De Reyna, a friend of his, to help him in disposing of the property. Mr. De Reyna is a real estate agent, and he testifies that he made several attempts to dispose of the property, taking the matter up with the representatives of several oil companies, including the Standard Oil Company, but did not advertise the property for sale and no definite offer resulted from his efforts to sell the property to any of the prospects.

The plaintiff testified that he also asked the assistance of another real estate agent, Walter Reboul, but this party did not take the stand, and it appears nothing came of the negotiations that he might have had with reference to the sale of the property.

Plaintiff and Mr. De Reyna both testified that, in the event De Reyna sold the property, he would receive the full commission, and that the plaintiff would not share in any portion of it, and that such was the relation he had with him on other pieces of property that he undertook to sell for plaintiff.

It appears that, during the early part of 1927, defendant desired to remodel the gas station, and plaintiff admits having a conversation with the defendant concerning the remodeling of the station, and that plaintiff advised defendant that it would be a good idea, and suggested that the defendant buy a lot adjacent to the place of business, which the defendant did on February 25, 1927, when the act of sale was passed by which he acquired title to this lot for the sum of $4,000.

During February, 1927, it appears that the plaintiff, one Sunday, drove into the defendant's service station for the purpose of having a tire repaired, and that the defendant told the plaintiff that the 120-day period of the contract had expired, and, as he had not sold the property, and as defendant was going to remodel the place and operate the business himself, that the contract be considered at an end, and that the plaintiff agreed by saying: "That is fine."

Just prior to the time of this conversation the plaintiff, who was engaged in the collection business, wrote the defendant two letters on the dates of January 25 and 27, 1927, threatening to file suit against him in behalf of a client, the Victory Oil Company, for $1,664.72, which amount, it appears, the defendant owed to this company, and suit was entered for this claim on January 29, 1927.

During March, 1927, H. J. Estrate, who is engaged in the contracting business, was asked by defendant to submit bids for the remodeling of his service station. During their conversation the defendant informed Estrate of the contract that he had made with the plaintiff, and Estrate suggested, in order that there could be no misunderstanding about the matter, that he would write to the plaintiff a letter canceling the contract, as defendant was going to remodel the place and would not be interested in selling it. Estrate testified that he wrote and mailed the letter on March 15, 1927, as follows:

"March 15, 1927.
"James J. Tracey, 3307 Banks.
"Dear Sir: You are hereby advised that the contract given you by Mr. Nick Biri dated Sept. 30, 1926, for the sale of property 402 S. Hagan Ave., has expired and you are hereby notified of expiration and cancellation of same to take effect immediately.
"Agt for Nick Biri
"H. J. Estrate."

Plaintiff denies receiving this letter. Thereafter nothing further appears to have been done with reference to the contract, except that plaintiff says as late as. May, 1927, he was still trying to sell the property.

On February 16, 1928, the defendant entered into a contract of employment with I. B. Rennyson, a real estate broker, authorizing him to sell the property for $35,000, agreeing to pay 4 per cent. commission. On February 23, 1928, Rennyson's office succeeded in signing the Standard Oil Company to a contract to purchase the property for $35,000 cash. This included the lot which was purchased by defendant on February 25, 1927, for $4,000. The act of sale by the defendant to the Standard Oil Company was passed on March 30, 1928. On March 30, 1928, the plaintiff wrote the defendant a letter advising that he had learned of the sale to the Standard Oil Company and calling defendant's attention to the fact that his contract was still in existence and claimed commission of $1,400, further advising that suit would be entered if it were not paid. The plaintiff testified that this letter was delivered during the morning of March 30, 1928.

On March 31, 1928, the attorney who examined the title for the Standard Oil Company suggested that defendant write to the plaintiff that he had sold the property, in order to prevent any misunderstanding, because the contract still remained registered in the conveyance office uncanceled. This letter was written and sent to the defendant, as suggested.

It would seem that the evidence shows that the letter canceling the contract was written and mailed on March 15, 1927, because the testimony of one disinterested witness, which is corroborated by the defendant's testimony, was introduced by defendant, whereas the plaintiff simply denied that he ever received the letter. Of course, if this letter was written and received by the plaintiff, then clearly the plaintiff would not have any case.

It likewise appears from the record that the plaintiff did not directly or indirectly influence the procurement of the purchaser, the Standard Oil Company, as alleged in the petition, but that this sale was consummated entirely through the efforts of Simon Pelaunge, a representative of I. B. Rennyson's office. The defendant paid the full commission of 4 per cent. or $1,400, to Mr. Rennyson.

Be that as it may, we find that the preponderance of the evidence shows that there was a verbal conversation between the plaintiff and the defendant concerning the cancellation of the contract on one Sunday during February, 1927. On this issue we have the testimony of Mr. W. E. Wiggins, a disinterested party, who was present on the occasion, as well as the defendant and his wife's testimony to the same effect. The only evidence offered by the plaintiff to offset this testimony is his own denial that he agreed to cancel the contract. It is significant that, at the time of the alleged conversation concerning the agreement to verbally cancel the contract, the plaintiff had not sold the property, but had agreed to let Mr. De Reyna sell it, without in any way sharing in the commission, and had accepted a claim against the defendant and had written two letters threatening to sue him. If he regarded the contract, which could be terminated by a 5-day notice by the defendant, valuable, it would appear to us that he would not have agreed to let De Reyna have the whole commission, and certainly would not have written his client letters threatening to sue him.

Plaintiff's only explanation of his position as to this incident was that, as a friend of the defendant, he undertook to straighten out the matter, but, once having accepted the claim, he could not do otherwise than to follow it up. But plaintiff's evidence also shows that he had very little personal regard for the defendant, and he surely was too intelligent to think that the defendant would let a contract remain in effect whereby the plaintiff might obtain a large commission for the sale of the property under the circumstances.

It must also be remembered that the defendant had changed his mind about selling the place, as the record conclusively shows he bought an extra lot and had plans made for the remodeling, and was receiving bids for that purpose. It appears that he would not add on a $4,000 lot and some $10,000 of improvements to the premises and still sell the place for $33,000, net to him, the original price, which was at no time ever changed.

It is also to be noted that the $4,000 lot was included in the sale to the Standard Oil Company, which lot was purchased subsequent to the date of plaintiff's contract, and therefore could not possibly be affected by the agreement. Still the plaintiff sues the defendant for commission on the full amount of $35,000.

In the case of Harvey vs. Mouncou, 3 La. App. 231, this court held that a written contract containing a provision for a 30-day written notice for its cancellation could be canceled by a subsequent verbal agreement.

In the light of the foregoing discussion, we find it unnecessary to pass upon the other defenses raised, because we are of opinion that the preponderance of the evidence shows that the contract between the plaintiff and defendant sued upon was canceled by verbal agreement during February, 1927.

For the reasons assigned, the judgment of the district court is annulled, avoided, and reversed, and it is now ordered, adjudged, and decreed that plaintiff's suit be dismissed, at his cost.