Philip C. Treadaway is a licensed real estate agent in New Orleans. John E. Ruiz is a licensed real estate salesman, and, until June 4th, 1943, was employed by Treadaway. There was no written contract of employment but both state that the verbal understanding between them contemplated that Ruiz would receive no salary but would be paid commissions on the following basis: Should he secure for Treadaway a "listing" on property for sale and should he also produce the purchaser to buy the listed property, he would receive one-half of the total commission. Should he secure the listing but not secure the purchaser, and should the purchaser be produced by someone else in Treadaway's office, he, Ruiz, would receive one-third of the commission, the other employee, who should produce the purchaser, would receive one-third and Treadaway would retain one-third. Should the property be sold to a purchaser produced by the office of another agent, the two agents would divide the commission *Page 379 
and Ruiz, having secured the listing, would receive one-half of Treadaway's one-half of the entire commission.
Ruiz claims that he, as the listing salesman, is entitled to one-third of the total commission received by Treadaway on a sale of real estate, the listing of which had been secured for Treadaway by Ruiz. The total commission received by Treadaway was $435, and, therefore, Ruiz alleges that he is entitled to $145.
Treadaway admits that he received the commission of $435 on the sale of the property in question and that Ruiz had formerly, on two occasions, secured for his office the listing of the property, but he asserts that both of the said listings had expired before the property was sold and that the employment of Ruiz had terminated prior to the said sale.
There was judgment below for Ruiz as prayed for. Treadaway has appealed.
The important facts are not in controversy. On April 22d 1943, Ruiz, as a salesman in the office of Treadaway, secured from Mr. and Mrs. Richard Coates a written contract in which they listed for sale their property No. 5864 Louisville Street for $9,000 and agreed to pay a commission of 5% on the gross amount of any price accepted by them. This contract by its terms expired in "ten days" but contained a stipulation to the effect that the commission would be payable on the gross amount of any agreement to sell "made within forty-five days after the expiration or termination of this contract, with anyone to whom such property has been quoted, during the term of this contract."
During the ten day term of this contract the property was "quoted" and shown to the aunt and mother of Miss Rita Lema, who later bought the property. The mother and aunt of Miss Lema testified that they were acting for her as she was ill.
No agreement of sale was made during the ten day term of that contract but on May 13th, 1943, Ruiz secured from Mr. and Mrs. Coates another written contract, listing the same property for sale at $8,700. This listing expired by its terms on May 21st, 1943, but it contained a forty-five day stipulation identically the same as that quoted above from the first contract.
During the term of this second listing, May 13th-May 21st, 1943, the property was again quoted and shown to Miss Lema through her mother and aunt, but no agreement to sell was arrived at during that term.
On May 28th, 1943, one week after the expiration of the principal term of the second contract, another employee of Treadaway obtained from Miss Lema an offer of $8,700 for the property of Mr. and Mrs. Coates. This offer contained a stipulation that Miss Lema would buy the property if she could complete the sale of property owned by her at No. 1759 North Dorgenois Street. This sale was not completed so no sale of the Coates property resulted from that offer.
On June 4th, 1943, the employment of Ruiz by Treadaway terminated. We are not given the reasons and, so far as the record shows, those reasons are of no importance here.
On June 15th, 1943, Mr. and Mrs. Coates again listed their property with Treadaway, this time through two other employees of Treadaway.
On June 16th, 1943, Miss Lema made an unconditional offer of $8,700 for the property of Mr. and Mrs. Coates and this offer was accepted. The sale was later consummated and Treadaway received a gross commission of $435 and paid one-half of this to the other employees, treating them as having procured the listing of the property and as having also procured the purchaser.
Ruiz claims that he should have been paid one-third of the total commission on the ground that he first brought Mr. and Mrs. Coates to Treadaway's office and secured from them the listing of the property, which property was later sold within forty-five days after the termination of the second contract to a prospect to whom it had been shown during the term of that contract.
Ruiz also claims that he first "quoted" the property to the ultimate purchaser through her mother and aunt and that, therefore, as a matter of fact, he is entitled to a full one-half of the commission but he waives his claim to the additional portion and limits it to the amount sued for, that is to say, one-third of the total commission.
While it is true that the salesman Ruiz was not a party to any of the three contracts under which Mr. and Mrs. Coates listed their property with Treadaway, it cannot be gainsaid that under his verbal contract of employment with Treadaway *Page 380 
he had an interest in the first two of those contracts.
It is shown that an essential part of the real estate business is the obtaining of listings and it is admitted that a salesman is entitled to a commission of one-third for merely obtaining a listing of the property, provided the property be ultimately sold, and that in order to obtain this commission the salesman need take no part whatever in actually selling the property. Surely then the agent, where one salesman has obtained such a piece of business, cannot deprive that salesman of his potential rights under his contract of employment by acting through another salesman to obtain a new listing and by then selling the property under the new listing.
When Ruiz, under the first contract, on April 22nd, which it is true expired in ten days but which contained the forty-five day clause, entered into this agreement he potentially earned his one-third commission on any sale which within forty-five days of the termination of that contract might be made to a prospect to whom the property might have been quoted during the ten day principal term of the contract. And the same may be said of the second listing obtained by Ruiz on May 13th and expiring on May 21st, since that listing contract also contained the forty-five day clause. This forty-five day clause was effective until, let us say, July 5th, and it is shown that the property was sold on June 17th, well within that period. It is shown also, as we have said, that it was sold to Miss Lema, to whom, through her mother and aunt, it had been quoted during the principal term of that contract.
It is quite evident that had Treadaway not, in the meantime, on June 15th, obtained through other employees a new listing contract, he could and certainly would have claimed from Mr. and Mrs. Coates the full commission due him because of the forty-five day clause in the contract which Ruiz had obtained. Harvey v. Sims, La.App., 198 So. 389; Englemann v. Auderer, 10 La.App. 136, 121 So. 194. See also Harvey v. Riedlinger, La.App., 17 So.2d 60. Surely then, since he had certain rights under that contract which he would have been entitled to enforce had it been necessary, he cannot be heard to say that Ruiz did not have rights also, of which he could not have been deprived without his consent. Of course, Treadaway had a perfect right to obtain a new listing contract because by that new contract he again obtained an exclusive right to negotiate for the sale of the property, whereas there remained rights under the old contract, only if the property should be sold to a prospect to whom it had already been quoted. But when he obtained the new listing he did not put an end to Ruiz's rights which grew out of the old one.
Defendant maintains that whatever rights Ruiz may have originally had terminated when he left defendant's employ. We cannot agree with this, since the termination of the employment came after Ruiz had obtained the listing and had therefore fully earned his commission. As we have said, such a commission is completely earned by the salesman by the mere obtaining of the listing and does not depend in any way upon any further action by that salesman, subject, of course, to the condition that the property be ultimately sold within the principal term of the contract or within the forty-five day period.
Nebel v. Wise Miller, 6 Orleans App. 773, and Barilleau v. Paquet, La.App., 159 So. 418, are authority for the doctrine that the mere termination of employment does not put an end to any rights of the employee which may have come into existence during the employment, unless there is a stipulation in the contract of employment or unless there is a recognized custom in the business that such rights will terminate with the employment. Here there was no such agreement and there was no such custom.
There is one question which may require explanation. The record does not show that Miss Lema, herself, the ultimate purchaser, was contacted in person during the term of the listing contract, but, as we have said, her mother and her aunt testified that they were acting for her and there is no doubt that she was the prospective purchaser. As evidence of this we refer to the testimony of Mrs. Lema, Miss Lema's mother, to the effect that she and her sister had acted for Miss Rita Lema, and the further fact that in the notarial act she appeared and bound and obligated herself "to all of the terms and conditions of this act of vendor's lien and privilege."
For these reasons the judgment appealed from is affirmed at the cost of appellant.
Affirmed. *Page 381