Plaintiff, a real estate broker, brought this action to recover a commission alleged to be due by defendant. The suit was dismissed upon an exception of no cause or right of action filed by defendant, from which judgment plaintiff has appealed.
The material allegations of fact set forth in plaintiff's petition, which must be taken as true in the consideration of defendant's exception, show that defendant entered into a contract with plaintiff on date of August 20, 1948, by reason of which plaintiff was accorded the right of exclusive listing of certain property of the defendant to be sold for a consideration of $9,850. The term of the exclusive listing was fixed at a period of 40 days, and the agreement provided for a 5% commission to the broker. The contract contained the *Page 510 
following provision: "Should this property be sold by me, by you or by any other agent during the existence of this contract, or should it be sold within six months after the expiration of this contract to anyone to whom this property has been exhibited or offered for sale by you for the price above set out or for any other price, I agree to pay you the above stipulated commission as a consideration for your previous efforts to sell the property."
Proceeding under the authority of the contract plaintiff advertised the property for sale, and, on date of August 30, 1948, exhibited the property to one Charles Cox. who made an offer of $9,250, which was duly transmitted to defendant and declined by him.
On September 11, 1948, plaintiff directed a letter to the defendant, the body of which reads as follows:
"Dear Mr. Tracy:
"By mutual agreement between yourself and this company we hereby acknowledge the termination of our exclusive listing contract on your property, the South 132 ft. of Lot 36 of the Nichols Subdivision of Caddo Parish, La.
"We are sorry we were unable to be of service to you at this time."
On September 27, 1948, defendant executed a deed conveying the property described to Charles S. Cox and wife for a total consideration of $9,250.
On the basis of the above alleged facts plaintiff claims a commission, based upon 5% of the sales price of the property, in the amount of $462.50.
Defendant's exception rests upon the contention that plaintiff's letter of September 11th effected a complete rescission of the contract between the parties as the result of which plaintiff has no right to maintain an action based upon the provisions of the original contractual agreement.
On behalf of plaintiff it is urged, in effect, that the termination of the contract did not serve to annul and avoid the rights which had accrued to plaintiff prior thereto.
It is obvious that the only circumstance under which this question could possibly have arisen resulted from defendant's action in accepting the offer that had been made by the very person who was first interested in the purchase of the property as the direct result of plaintiff's efforts.
It is further obvious that the determination of the question here presented must rest upon a definition and the legal effect of the word "termination".
We find no cases directly in point. Plaintiff strongly relies upon the holding in Ruiz v. Treadaway, La. App., 17 So.2d 378, but in our opinion the facts of the cited case are distinguishable from the one at hand to such extent as to render the principle inapplicable although the ultimate result may be the same.
Distinguished counsel for defendant makes the following observation in brief before this Court: "The law is clear that the parties to a commutative contract may abrogate, cancel or terminate their agreement. This is exactly what has been done in this case."
The soundness of the principle set forth in the sentence first above quoted cannot be gainsaid, but the statement that "this is exactly what has been done in this case" is somewhat ambiguous. The gist of counsel's argument is that the terms "abrogate", "cancel", "rescind" and "terminate" should be considered as synonomous. It is urged that the use of the word "termination" in the letter of September 11th must be construed as having effected a complete rescission of the original contract of August 20th, and that it served, not simply to put an end to the duration of the agreement, but also to wipe out any rights acquired or any obligations incurred. We are unable to concur in this interpretation.
There is no question as to the right of parties to an unexecuted commutative contract to abrogate or revoke such contract by mutual consent, and this proposition is well substantiated in this State. Article 1901 of the Civil Code declares that legal agreements can be revoked "by mutual consent of the parties"; Article 1945, dealing with the interpretation of agreements, confirms the right of the parties to "abrogate or modify" such agreements; and Article 2130, in enumerating the methods of extinguishing obligations, includes "recission". *Page 511 
We cannot subscribe to the interpretation sought to be enforced by defendant that "termination" comprehends the same effect as would be implied by the terms "revocation", "abrogation", or "rescission". Black on Rescission and Cancellation, Second Edition, Volume 1, Section 1, Page 1, points the distinction as follows: "To rescind a contract isnot merely to terminate it, but to abrogate and undo it fromthe beginning; that is, not merely to release the parties fromfurther obligation to each other in respect to the subject of the contract, but to annul the contract and restore the parties to the relative positions which they would have occupied if no such contract had ever been made." (Emphasis by the Court)
We find a similar definition by the Supreme Court of Oklahoma in F. M. Drilling Company v. M. T. Oil Company,192 Okla. 372, 137 P.2d 575, 577, as follows: "'Termination' or 'cancellation' of a conditional contract means to abrogate so much of it as remains unperformed, doing away with an existing agreement upon the terms and with the consequences mentioned in the writing, and different from 'rescission,' which means to restore the parties to their former position."
It is our view that the mutual consent of the parties as evidenced by plaintiff's letter of September 11th must be construed as a modification rather than an abrogation of the original contract.
Reverting to the provisions of Article 1945 of the Civil Code with respect to interpretation, we find that the fourth paragraph of the Article provides: "That it is the common intent of the parties — that is, the intention of all — that is to be sought for; if there was a difference in this intent, there was no common consent and, consequently, no contract."
While the above rule of interpretation deals with the construction of contracts, we are convinced that it is equally applicable to the construction of agreements abrogating or modifying contracts. Viewed in this light there is no question as to the conclusion that the parties to this litigation were actuated by obvious differences of intent. The plaintiff by this suit has evidenced his construction of the agreement of "termination" in a manner entirely at variance with that of defendant, who proceeded to conclude this transaction within a period of little more than two weeks after the "termination" with the very party on the very terms that had been procured by plaintiff.
With further reference to a consideration of the intention of the parties the following principle is noted in 17 C.J.S., Contracts, § 412, page 899: "Rights acquired under a contract may be abandoned or relinquished by agreement, conduct, or by a contract clearly indicating such purpose. To constitute an abandonment of rights, an actual intent to abandon must exist." (Emphasis by the Court.)
We can only conclude that in this instance there has been norescission of the contract of August 20th by mutual consent, and, consequently, the termination cannot be construed as having deprived plaintiff of those rights which had accrued to him prior to September 11th.
It is additionally urged on the part of defendant that plaintiff failed to reserve the rights or benefits under the contract which had accrued to him, and, as a consequence, has lost the same. In support of this contention reference is made to 17 C.J.S., Contracts, § 392, page 884, and cases there cited, to the point that no claim or action for breach can be maintained nor are parties bound by a contract subsequent to a rescission by mutual consent. We find no fault with this statement, but we continue to maintain that this interpretation would be appropriate only in the event the terms "rescission" and "termination" could be used interchangeably.
There is nothing in the allegations of plaintiff's petition which can be construed as an intention to abandon. On the contrary the allegations refute such an intent.
For the reasons assigned the judgment appealed from, maintaining the exceptions of no cause and no right of action and dismissing plaintiff's suit, is reversed and set aside and this cause is remanded to the Honorable The First Judicial District Court in and for Caddo Parish, Louisiana, for further proceedings consonant with the *Page 512 
opinions expressed herein. Costs of this appeal are to be borne by defendant-appellee and all other costs shall await final determination hereof.