MARVIN, Judge.
Judgment below rejected the demands of a realtor for a real estate commission on a written contract which the lower court held was “terminated” by the mutual oral consent of the realtor and the owner. Plaintiff realtor appeals. We affirm.
The written contract was to extend for a four-month period. Once the contract was signed, the plaintiff real estate agent listed the property with the proper real estate board, placed for sale signs on the property, and advertised its availability for sale in newspapers. Several prospective purchasers responded by inspecting the property, one of which was accompanied by the agent. About three weeks after the contract was signed, the landowner,- Mrs. Yockey, a widow, informed the agent that she no longer desired to sell the property because she was going to rent it to one of her children. The agent thereafter informed other realtors the property was not for sale, cancelled further newspaper advertisements and removed the for sale signs. The landowner offered to pay the expenses incurred by the agent but the agent declined to bill the landowner.
About two weeks after the property had been taken off the market, an opportunity arose for the landowner to purchase an adjacent vacant lot. Mrs. Yockey purchased the vacant lot for $5,000.00 cash. Some two weeks following the purchase of the vacant lot, Mrs. Yockey sold the property and the adjacent vacant lot to a William H. Storm by credit deed for $45,000.00, which was the price for which the written agency contract had listed the property, excluding the vacant lot.
Mrs. Yockey’s daughter, who was engaged to be married, changed her plans to rent the house after consultation with her fiancé about the amount of the proposed rental. Mrs. Yockey’s son, who was attending Louisiana Tech University in Rus-ton and who was going to live in the house and commute to school, eventually decided that the cost of commuting from Monroe would not warrant his living in the house. After Mrs. Yockey’s children changed their respective plans, Mrs. Yockey then conferred with three different individuals about renting the house. One of these individuals was Storm, the ultimate purchaser.
After several discussions about a lease purchase agreement, Storm and Mrs. Yockey agreed on the credit sale aforementioned, payable over 144 months. Storm was a residential contractor who was building a house which Mrs. Yockey purchased to live in about the time she signed the agency contract with plaintiff realtor. After the conversations between Mrs. Yockey and the agent which took the former Yockey home off the market, and after Mrs. Yockey’s daughter changed her plans about living in the house, Mrs. Yock-ey purchased from Storm a mobile home or trailer for $7,000 cash to be used as a residence for her daughter and future son-in-law. The trailer purchase occurred about three weeks before Mrs. Yockey sold to Storm the house and adjacent vacant lot.
The record supports the lower court’s conclusions that the agent was not the procuring cause of the sale; that there *892 was no contact between the ultimate purchaser and the agent; and that the evidence did not show, but negated any collusion between Mrs. Yockey and the ultimate purchaser as to any effort to avoid payment of a commission to the agent.
The trial court correctly found that the written contract between Mrs. Yockey and the agency was both an exclusive agency contract and one which conferred on the agent an exclusive right to sell the property. See Kirkland v. Bray, 241 So.2d 601 (La.App. 2d Cir. 1970). Appellant contends since the lower court found he had the exclusive right to sell the property, he is entitled to his commission on the sale made by the owner [of course, during the term of contract]. This would be true under Kirkland, supra, and authorities cited therein unless the contract was terminated or rescinded by the mutual agreement of the parties. See Christ v. Christ, 251 So.2d 197 (La.App. 3d Cir. 1971); Tracy v. Biri, 14 La.App. 125, 129 So. 461 (Orl.1930).
Appellant further argues that since the trial court found that the contract was merely “terminated” he is still entitled to his commission because rights which arise before termination of a contract continue to exist after termination, citing Tharpe v. Tracy, 40 So.2d 509 (La. App. 2d Cir. 1949). In Tharpe, the parties themselves used the word “termination” and applied it to a real estate contract. There we said:
“It is our view that the mutual consent of the parties as evidenced by plaintiff’s letter of September 11th must be construed as a modification rather than an abrogation of the original contract.” 40 So.Zd 509, 511.
Factually, Tharpe is inapposite. There the agent exhibited the property to the ultimate purchaser and quoted the price to him. About one month later — some two weeks after the agency contract had been “terminated” — the landowner sold the exact property to this purchaser for the exact price and terms as given to the purchaser by the agent. Under the facts there, the holding was eminently correct that the true intention was a modification rather than an abrogation of the contract. Here, the agent did not show the property to the ultimate purchaser or otherwise negotiate with him regarding the sale. Storm appeared on the scene after the contract was terminated or rescinded.
The trial court here found that the sale to Storm was previously “unplanned and was to a person with whom no previous negotiations had been had.” Whether the parties here intended rights under this contract to continue for the duration of its specified period, notwithstanding the property being taken off the market, is essentially a question of fact, the determination of which is best made by the lower court. In the absence of manifest error, the factual determinations of the trial court will not be disturbed.
“There is no question as to the right of parties to an unexecuted commutative contract to abrogate or revoke such contract by mutual consent, and this proposition is well substantiated in this State. Article 1901 of the Civil Code declares that legal agreements can be revoked ‘by mutual consent of the parties’; Article 1945, dealing with the interpretation of agreements, confirms the right of the parties to ‘abrogate or modify’ such agreements ; and Article 2130, in enumerating the methods of extinguishing obligations, includes ‘recission’.” Tharpe, supra, at page 510.
At appellant’s cost, judgment is
AFFIRMED.