ROUSSELLE, Respondent, *v.* CRAMER, Appellant.

(No. 4,968.)

(Submitted January 4, 1923. Decided January 22, 1923.)

[212 Pac. 294.]

*Trespass—Cutting Timber—Evidence—Sufficiency—New Trial —Conflicting Evidence—Discretion.*

Trespass—Cutting Timber—Evidence—Sufficiency.
  1. In an action for trespass, evidence *held* sufficient to establish that defendant wrongfully cut and removed timber from plaintiff's land and to warrant the damages assessed.
New Trial—Conflict in Evidence—Appeal.
  2. Where the verdict awarding damages was based upon conflicting evidence, refusal to grant a new trial asked for on the ground that the evidence was insufficient to sustain it will not be disturbed on appeal.
Same—Refusal of New Trial—Reversal of Order, When.
  3. It is only in cases of manifest abuse of discretion on the part of the trial court in refusing a new trial that its order will be reversed on appeal.

*Appeals from District Court, Flathead County; C. W. Pomeroy, Judge.*

Action by Gertrude Rousselle against Ben Cramer. From a judgment for plaintiff and an order denying a new trial, defendant appeals. Affirmed.

*Messrs. Foot & Aronson,* for Appellant, submitted a brief; *Mr. Alex T. Aronson* argued the cause orally.

*Mr. J. E. Erickson,* for Respondent, submitted a brief and argued the cause orally.

MR. JUSTICE GALEN delivered the opinion of the court.

This action was instituted for the recovery of damages for the alleged trespass of the defendant in cutting and removing timber from plaintiff's land. Recovery of $600 was sought as the value of the trees cut and removed, and $1,000 for the resulting injury to the premises. The cause was tried to a

jury and resulted in a general verdict in plaintiff's favor for the sum of $735, upon which judgment was duly made and entered. The appeal is from the judgment and from an order denying defendant's motion for a new trial.

It appears that one Wilfred G. Rousselle, on August 7, 1918, was the owner in fee of lots 4 and 5, located at Yellow Bay on Flathead Lake, Flathead county. On August 28, 1918, Wilfred G. Rousselle, by way of adjustment of property rights with his wife, the plaintiff herein, in an action for a divorce then pending between them, transferred and assigned to the plaintiff, by warranty deed, all of lot 4, without restriction or reservation. This deed was duly filed for record on September 24, 1918. Lot 4 comprises 15.60 acres, and lot 5 consists of 60 acres.

On August 7, 1918, Wilfred G. Rousselle, by an instrument in writing, regularly sold "all timber fit for railroad ties, together with pine, fir and tamarack sawlogs" upon lot 5; and it is contended by the defendant that thereafter, by oral agreement made on or about August 11, 1918, Mr. Rousselle agreed that the defendant could have the timber on lot 4 upon the same terms expressed in the written contract regarding the timber on lot 5.

The plaintiff in her complaint, supported by evidence upon the trial, made claim that the defendant had, without her knowledge or consent, willfully and unlawfully cut and removed from lot 4, the tract belonging to her, a total of 400 trees. Evidence offered in support of plaintiff's case fully establishes the allegations of her complaint as to the number of trees so cut and removed from this land, and the defendant in his answer admits the cutting and removal from such premises of 385 ties. Plaintiff's witnesses estimate the number of board feet in the timber so removed at from 90,070 to 138,910 feet; and the defendant fixes the number of trees by him removed at 296, and says that they contained in all 23,616 board feet.

In his answer defendant admits an indebtedness for the timber cut and removed from the lot in question of $313.85,

which he tendered into court as belonging to either the plaintiff or Wilfred G. Rousselle, as should be determined by judgment of the court. Defendant, as a witness in his own behalf, admitted that the timber in question had never been paid for by him to Wilfred G. Rousselle, or anyone else, and Wilfred G. Rousselle disclaimed any right, title or interest whatsoever in or to the timber or the amount due in consequence of its removal.

The only question presented on this appeal is the sufficiency of the evidence to justify the verdict.

Fred J. Wyman and Gus DeStaffeney, expert timber cruisers and scalers, as witnesses for the plaintiff, testified that they had visited the premises in question in the months of June and August, respectively, in the year 1919, and had cruised the land and made estimates of the timber removed therefrom. Each of these witnesses gave as their expert opinion that the timber had been cut in the winter months of 1918 and 1919, basing their opinion upon the appearance of the foliage and the looks and condition of the stumps on the ground. This testimony was properly admitted, but standing alone might have left the jury in doubt as to the time the timber was actually cut. However, supplementary to, and in support of, these expert witnesses, is the testimony of E. E. Taylor and Wilfred G. Rousselle.

E. E. Taylor, the plaintiff's father, and agent for her in negotiating a settlement of the controversy between the plaintiff and defendant, testified as follows respecting a conversation had with the defendant in the summer of 1919, wherein the defendant admitted that the timber had been cut from lot 4 in the winter of 1918 and 1919. He testified: "The first conversation I had with Mr. Cramer personally was, I think, the 8th or 9th of July. I had written him before in regard to it. On the twenty-second day of June, when I went down there, I saw the situation, although I did not go on the 22d to the further end of lot 4, but—I mean on the 15th. But on the 22d, I went with Mr. Casey and the surveyor; I think his name is Hoidal. We went down and run these lines, and I

was surprised when I got on there and seen the amount of timber that was cut off of lot 4. * * * Q. When did you see him again? A. I think the next time I saw him was on the 20th of July. Went down and tried to get a settlement. Q. June or July? A. July 20th. It was on Sunday, and I think it was the 20th. I wouldn't be positive as to the date, but I think it was the 20th. It was right in there somewhere. Q. Well, you had a conversation with him at that time down there on the land? A. Yes, sir; I did. Q. You may state if you said anything at that time with reference to the time that the timber was cut. A. Well, he said he had cut—it was cut in the winter. He didn't state any specified time. He said he cut that in the winter. Q. Did he offer any excuse why it had been cut or anything? A. No, he did not. Q. State whether or not he made any remarks about being present when the timber was cut. A. He did. Q. State what it was. A. Walking down the road with him, myself, Mr. Erickson and Mr. Fred Rousselle, before we came home on the 20th—previous to this, we had been up to his cabin, trying to get a settlement. He offered—well, I don't know if you asked me that question— Q. No. A. Then after we had been up to the cabin, we walked along the road, and he says, 'I wouldn't have cut this if I had been here.' He got on further, and said, 'I wouldn't have cut this if I had been here.' He said, 'I was in Missoula at the time,' and when I got over here to the corner, he said to me, and to you and Mr. Rousselle, he said, 'Do you see that tree there?' You says, 'What tree?' He says, 'That tree, there, that is blazed.' You says, 'Yes.' You asked him who blazed it. He says, 'I blazed it.' You says, 'Was Fred Rousselle with you when you blazed it?' He says, 'No, sir.' Q. When did he say he was in Missoula? Did he say when he was in Missoula? A. No, he did not state the time he was in Missoula. Q. Did he state about the time, the season of the year? A. No, he did not; but he had told me previous to this when he went there. Q. Well, when was that? A. He claimed he hadn't been cutting but a little while after the contract was drawn until they took him away to Missoula,

and he was in for ninety days, something like that, for selling two bot— ''

And Mr. Rousselle testified: ''Q. I say, do you recall being at Yellow Bay last summer about the 20th of July? A. I do. Q. And do you recall the defendant, Mr. Cramer, was present? A. I do. Q. Mr. Taylor? A. I do. Q. Mr. Wyman? A. I do. Q. I will get you to state if you heard the defendant, Ben Cramer, make any remarks that day as to when the timber on lot 4 was cut? A. Yes. Q. If so, you may state what he said. A. Mr. Cramer made the statement on the road. He said the timber—Mr. Cramer made the statement that the timber was cut while he was in Missoula. Q. Did he say when, what time of the year? A. No, he didn't. He said it was while he was at Missoula. Q. Do you know when he was at Missoula? A. Well, I heard that he was there, but I never seen him. Q. When? A. Well, it was—I couldn't say exactly as to the date. Q. Well, substantially? A. I should judge it was some time in the latter part of November.''

The defendant himself fixes the time that he was in Missoula by the following testimony given by him on the trial: ''I was there. I went over there on the 8th of October, and came back on the 9th of October. Then I went over on the—I stayed at home just a week, and about the 16th of October, and stayed until—I am mistaken about that. It was November I went to Missoula. I went over in November, on the 8th of November, and came back just a week later. Then I went over about the 16th and came home about the 16th of January. I stayed in Missoula from the 15th of November until the 15th of January.''

Mr. Rousselle acknowledges the execution of the agreement [1] with the defendant covering the timber growing on lot 5, but denies there was any agreement entered into with the defendant respecting the timber on lot 4. It was developed as a part of the plaintiff's case that the land in question is most valuable for summer homes, and that its desirability for such purpose was much lessened by virtue of the removal of the

growing timber. Witnesses familiar with land values along the Flathead Lake shore line, and with the property in question, estimated that the removal of the timber from the ground would lessen the value by one-half. It is true that there was a material conflict in the testimony as to when the timber was removed, the value thereof, and the amount of damages to the freehold in consequence of the timber being cut and removed; but in our opinion it was sufficiently established that the timber was cut subsequent to the transfer of the property by deed to the plaintiff from her former husband, Wilfred Rousselle, and that the defendant wrongfully cut the same. The amount of damages found in favor of the plaintiff is not, in our view, excessive, considering the evidence. Where, as in this case, there is a conflict in the evidence, this court cannot and will not substitute its judgment for that of the jury, or of the trial court, in denying a new trial.

It is the well-established and long-settled rule in this state [2] that where the evidence is conflicting a new trial will not be granted, the jury being the triers of issues of fact. (*Bateman* v. *Raymond,* 15 Mont. 439, 39 Pac. 520; *McIntyre* v. *McCabe,* 19 Mont. 333, 48 Pac. 390; *Dempster* v. *Oregon Short L. R. R. Co.,* 37 Mont. 335, 96 Pac. 717; *Fearon* v. *Mullins,* 38 Mont. 45, 98 Pac. 650; *Murphy* v. *Cooper,* 41 Mont. 72, 108 Pac. 576; *Albertini* v. *Linden,* 45 Mont. 398, 123 Pac. 400; *Previsich* v. *Butte Elec. Co.,* 47 Mont. 170, 131 Pac. 25; *Mattison* v. *Connerly,* 46 Mont. 103, 126 Pac. 851; *State* v. *Dumphy,* 57 Mont. 229, 187 Pac. 897; *Harrington* v. *Mutual Life Ins. Co.,* 59 Mont. 261, 195 Pac. 1107.)

It is only in instances of manifest abuse of discretion on [3] the part of the trial court in refusing a new trial that its action will be reversed on appeal. (*Stettheimer* v. *City of Butte,* 60 Mont. 111, 198 Pac. 455.)

The jury being the exclusive judges of the credibility of the witnesses and having seen and heard them testify, as did likewise the trial judge, we see no reason to interfere with the ver-

dict of the jury or the order of the trial court denying a new trial.

The judgment and order are affirmed.

*Affirmed.*

Mr. Chief Justice Callaway and Associate Justices Cooper, Holloway and Stark concur.