F. & M. DRILLING CO. v. M. & T. OIL CO.

No. 31034. May 4, 1943.

*137 P. 2d 575.*

Hamilton & Kane, of Pawhuska, for plaintiff in error.

Chas. R. Gray and W. N. Palmer, both of Pawhuska, for defendant in error.

BAYLESS, J. M. & T. Oil Company, a corporation, instituted an action in the district court of Osage county against F. & M. Drilling Company, a copartnership, for relief in relation to an oil and gas mining lease on real estate in that county; and the defendant appeals from the judgment rendered in favor of the plaintiff.

The plaintiff was the owner of an oil and gas lease and entered into a contract with the defendant to convey it an interest in said lease in consideration of certain obligations assumed on the part of the defendant. Later it filed an action wherein it alleged, in substance, that the defendant had not performed the obligations assumed, and prayed that the court

decree that the interest conveyed to the defendant reverted to the plaintiff. The defendant filed an answer and cross-petition, setting up in the answer certain defensive matter and denying that it had failed or breached the obligations assumed, and setting up in the cross-petition a cause of action for certain money expended and an accounting. The plaintiff then filed a reply to the answer and an answer to the cross-petition joining issue with the matters pleaded by the defendant. At the conclusion of the trial to the court without a jury, the court rendered judgment for the plaintiff (1) quieting its title to the lease, and (2) rendering judgment for the plaintiff for a specified sum of money on the accounting.

We find nothing in the defendant's brief in chief questioning the correctness of the amount of the judgment on the accounting, and upon consideration thereof conclude that the only issues presented are those of fact and law relating to the judgment quieting title.

The first proposition urged by defendant is based on the theory that the purpose of plaintiff's action was to rescind the contract entered into by them; and, from this premise, it argues that plaintiff must fail because it failed to restore or to offer to restore to the defendant everything of value which the plaintiff received from the defendant in the transaction. Upon consideration of the plaintiff's petition and reply, we are of the opinion that the relief sought by plaintiff was not a rescission of the contract but was a decree that the defendant had breached or failed to perform the expressed obligations of the contract conveying an interest in the oil and gas lease and a judgment that the ownership of the assigned interest terminated and it reverted to plaintiff. It is a generally understood rule of law that the provisions of leases or contracts for the sale of interests in oil and gas leases calling for the performance of certain stated duties within a specified time are to be considered as express covenants, and the failure to perform them brings into operation the power

of termination and will justify a forfeiture of the interest conveyed at the suit of the other party. Summers, Oil and Gas (Perm. Ed.) vol. II, p. 400 et seq., § 431 et seq.

The term "rescind a contract" or the word "rescission" is used broadly in many cases and circumstances. See 54 C. J. 694. The difference between rescission, which requires a restoration of status quo, and abandonment or termination or cancellation of contract according to the terms of an agreement between the parties defining their rights upon the failure of either to perform, is well illustrated in the citation of authorities in Words and Phrases (Perm. Ed.) vol. 37, Rescission. Sanborn v. Ballanfonte, 98 Cal. App. 482, 277 P. 152, is a case dealing with a similar problem relating to oil and gas leases. There it was contended by the lessees that the election of the lessor to terminate the lease for the failure to drill amounted to a rescission relating back to the inception of the agreement and annulled all of the obligations assumed by the lessees, whereas the lessor contended it was a forfeiture of the lessee's rights from and after the cancellation or termination that left intact the accrued obligations of the lessees but released the lessees as to those to arise thereafter. In discussing the difference between rescission and forfeiture, the court said:

"Obviously, therefore, the real issue is one of construction and determination of the legal effect of such acts of the parties. An executory contract may be rescinded, abandoned, or terminated, either wholly or in part, by the mutual consent of the respective parties at any stage of their performance. 6 Cal. Jur. § 230, p. 382; Thompkins v. Davidow, 27 Cal. App. 327, 149 P. 788. 'Termination' or 'cancellation' of a conditional contract means to abrogate so much of it as remains unperformed, doing away with an existing agreement upon the terms and with the consequences mentioned in the writing, and different from 'rescission,' which means to restore the parties to their former position. Young v. Flickinger, 75 Cal. App. 171, 174, 242 P. 516, Winton v. Spring, 18 Cal.

451. A reservation of rights contained in a mutual agreement of termination of future rights and obligations under an executory contract is binding upon the parties to it (citing authorities.) . . . What did the parties mean by the transaction consisting of plaintiff's serving of the notice to terminate or cancel the contracts and the acquiescence of defendants in said notice and the demands contained therein? When ascertained, that intention must prevail. It very clearly appears that instead of said notice and acquiescence constituting a rescission of said contracts, and rendering them void ab initio, as contended by defendants, they constituted an agreement—a meeting of the minds of the parties—in complete settlement of the subject-matter of the contracts, in accordance with the express reservations, terms and conditions set forth therein, under which the rights and obligation of defendants thereafter were to be terminated, manifested what the intention of the parties was in respect thereto and expressly reserved unto plaintiff the right of payment and recovery for the advance royalties which had accrued and matured up to the time of service of the notice and released defendants from all their obligation of payment of all advance royalties accruing under the terms of the contracts subsequent to the time of the service of the notice."

See, also, De Mille Co. v. Casey, 189 N. Y. S. 275, 115 Misc. 646. In Black on Rescission and Cancellation (2d Ed.) p. 8, § 5, it is said: "The facts which will ordinarily warrant the rescission of a contract must have existed at the time the contract was made."

In the case before us the thing of value that defendant seeks by the restoration of the status quo is the bonus money paid to plaintiff. Apparently this court has not had occasion to differentiate between rescission and termination or cancellation as has been done in the authorities cited above, although there are many cases in our reports dealing with the cancellation of the lessee's rights for failure to perform the covenants of a lease or of an assignment of an interest therein. In our opinion in Re Levy, 185 Okla. 477, 94 P. 2d 537, we observed that "If lessee fails within the term of the lease to develop or explore, and reduce to possession, his rights terminate, and the landowner retains the bonus and the land." We think that is the rule plaintiff seeks to have applied in this case.

The second contention urged by defendant is that equity will not lend its aid to a plaintiff whose primary and sole purpose is to obtain a forfeiture and to establish legal rights based thereon. The authorities cited by defendant relating to other types of business are inapplicable and those cases which relate to oil and gas leases involve fact situations which would not establish any analogy to the present situation.

In proposition No. 3, defendant bases its argument upon the equitable principle that parties to a contract will deal fairly and honestly with each other and that this implied covenant will be enforced by courts of equity. As a statement of an equitable principle this contention is satisfactory, but it is wholly lacking in applicability to the fact situation before us. The crux of the defendant's argument is that the plaintiff, by insisting upon forfeiture, will unjustly enrich itself by the bonus money paid by defendant. This is a result that follows the cancellation of all such contracts. But, as pointed out above, this is such a well-recognized legal principle in Oklahoma that we are not constrained at this time to undertake to write a different rule in such cases.

In proposition No. 4, it is urged that specific performance of a contract will not be decreed when the enforcement would be inequitable under the particular facts. This is not an action for specific performance of a contract, but rather for forfeiture, and while some equitable principles are applied alike to each type of action, we have pointed out above that forfeiture as applied to contracts such as the one under consideration have their well-established rules in this state contrary to the general tenor of the argument urged by the defendant on this proposition. Generally, forfeiture, in instances of this kind,

is not decreed when it would be inequitable under the particular facts. In connection with the discussion of this proposition the defendant has not discussed the specific facts, but has contented itself simply with citations of authorities stating the rule.

In the fifth proposition, the defendant takes the position that the court could not decree forfeiture in this case because the lease involved was a so-called departmental lease relating to the reserved mineral interest of the Osage Tribe; and says that such leases generally require the approval of the Secretary of the Interior for their validity and for the validity of transfers thereof; and points out that the Secretary of the Interior is not a party to the action and would not be bound by any judgment rendered in the matter. We do not observe from the authorities cited by either party that it is either necessary or customary to make the Secretary of the Interior a party to actions involving these leases, and we do not think the power of the courts to deal with this subject to the extent of their jurisdiction is limited in the manner contended by the defendant. The courts of Oklahoma may act in these matters as between litigants, but we think it is generally understood that the litigants take their chances with the administrative approval of the Secretary of the Interior thereafter.

The general, comprehensive, answering contention of the plaintiff that if the holder of an oil and gas mining lease or of an interest therein fails within the terms of his contract to develop the lease or explore for the minerals his rights terminate and it is proper to decree a forfeiture thereof and the grantor not only obtains a reverter of the interest conveyed but retains the bonus money paid, is correct. The instances wherein the courts of this state have decreed a forfeiture, and have canceled leases or interests therein and have quieted title in favor of the grantor and have permitted the grantor to retain the bonus money on the failure of the grantee to perform the express or implied covenants of oil and gas leases or assignments of interest therein, are too numerous and too well known to require citation. In this case we observe that the contract between the parties expresses two considerations going from the defendant to the plaintiff for the conveyance of the one-half interest in the lease, the first consideration being the payment of money and second consideration:

" . . . To drill a well for the discovery and development of oil on said leasehold to and into the Salicous Lime which is usually found in that vicinity at an approximate depth of 2,500 feet unless oil is found at a shallower depth and the parties hereto agree that the drilling may be stopped and a well produced from said shallower depth; and said second parties agree to complete said well and to furnish all necessary and proper equipment to put the oil into the tank, all of which is to be done free of any cost to the first party. It is further agreed that a well shall be started within four and a half months after the 15th day of March, 1941, and completed with due diligence thereafter."

The contract expressly provides:
" . . . It is further agreed by and between the parties hereto that, in the event the second parties should fail to fulfill the terms of this contract for the drilling of a well as hereinbefore provided for, the title to said one-half interest shall revert to the party of the first part . . . and it is further provided that in event the second parties should allow liens for labor or material to accumulate against said property for the drilling of said well the one-half interest agreed to be assigned shall revert to the first party."

The use of the word "revert" twice in defining the penalty for the failure of the defendant to perform the obligations to develop clearly indicates that it was the expressed intention of the parties to terminate whatever interest the defendant thereby acquired and to reinvest it in the plaintiff upon the failure of the defendant to perform these expressed obligations or covenants. This case was tried by the trial judge according to equitable principles,

and this court is not authorized to set aside his findings and judgment on appeal unless it can say that they are clearly against the weight of the evidence. Upon consideration of the evidence in the record, we are unable to say that the judgment rendered is clearly against the weight of the evidence.

The judgment appealed from is affirmed.

CORN, C. J., GIBSON, V. C. J., and RILEY, OSBORN, WELCH, HURST, DAVISON, and ARNOLD, JJ., concur.