HAMPTON, Respondent, *v.* COMMERCIAL CREDIT CORP. ET AL., APPELLANTS.

Nos. 8620, 8621

Submitted December 12, 1946. Decided December 31, 1946.

176 Pac. (2d) 270

Mr. Earle N. Genzberger, of Butte, for appellants.

Mr. Harlow Pease, of Butte, for respondent.

Mr. James H. Morrow, of Bozeman, amicus curiae.

Mr. Charles E. Pew, of Helena, amicus curiae, on petition for rehearing only.

MR. CHIEF JUSTICE LINDQUIST delivered the opinion of the Court.

Action for damages for alleged unlawful sale of automobile in violation of plaintiff's rights under Soldiers' and Sailors' Civil Relief Act, 50 U. S. C. A. Appendix, sec. 501 et seq. From judgment in favor of plaintiff the defendants have filed separate appeals.

On January 22, 1941, the plaintiff Jack S. Hampton purchased from the defendant Shelby J. Kelley an automobile and executed the usual conditional sale contract covering the automobile, which contract Kelley on the same day assigned to

the defendant Commercial Credit Corporation who thereafter notified Hampton of the assignment.

Hampton became delinquent for the June 3, 1942, and July 3, 1942, installment payments due under the contract.

On July 20, 1942, Hampton was notified to report for induction into the military service on July 30, 1942, and was inducted into the army on the latter date.

On July 25, 1942, the Commercial Credit Corporation, acting for itself or for itself and Kelley, repossessed the automobile without securing any court order for the repossession.

On July 28, 1942, on the application of the Commercial Credit Corporation the state registrar of motor vehicles issued a new certificate of title covering the automobile in the name of Commercial Credit Corporation.

From July 25, 1942, to December 22, 1942, the automobile was in the possession of the Commercial Credit Corporation or Kelley, or both.

On October 6, 1942, the Act of Congress entitled the Soldiers' and Sailors' Civil Relief Act was amended as hereinafter set forth.

On December 22, 1942, the automobile was sold to Lynneal Seavey who in turn executed a conditional sale contract to Kelley covering the automobile, which contract Kelley assigned to the Commercial Credit Corporation, the sale being made without any court order therefor.

On February 26, 1943, Hampton was discharged from the army.

On May 23, 1943, Hampton commenced an action in conversion against the Commercial Credit Corporation.

On December 21, 1944, Hampton filed a second and amended complaint joining as defendants the Commercial Credit Corporation and Kelley, alleging that the defendants wrongfully seized, possessed and sold the automobile in violation of the Soldiers' and Sailors' Civil Relief Act of 1940 as amended October 6, 1942, and claiming actual damages in the sum of

$1,500 and, in addition thereto, asked exemplary damages in the sum of $1,500.

The defendants, by separate answers, denied that the Soldiers' & Sailors' Civil Relief Act was in any way applicable to any transaction between the plaintiff and the respective defendants and denied plaintiff's claim of damages.

Kelley in his answer denied that he took the automobile from the possession of the plaintiff and alleged that he purchased the automobile from the Commercial Credit Corporation on or about August 6, 1942.

Commercial Credit Corporation in its answer alleged that it took possession of the automobile on July 25, 1942, by reason of Hampton's default in payments under the contract and that on or about August 6, 1942, it sold the automobile to Kelley.

The plaintiff in his reply denied this alleged sale and purchase of the automobile between Commercial Credit Corporation and Kelley.

The case was tried to the court and a jury. The jury returned a verdict in favor of the plaintiff and against the defendants for $1,000 compensatory damages and $1,000 exemplary damages. A judgment was entered in accordance therewith.

The first question to be determined is: Did the transactions between the two defendants, after the repossession of the automobile, constitute a sale of the car by the Commercial Credit Corporation and a purchase thereof by Kelley?

As to the taking of the car back from the Commercial Credit Corporation after it had been repossessed, Mrs. Kelley testified in part as follows: That she had an interest in the Eagle Garage with her husband, the defendant; that the Commercial Credit Corporation reported that the car had to be repossessed; that after the repossession of the car the Commercial Credit Corporation brought the car to the Eagle Garage; that she refused the car; that subsequently her husband went to Butte and "picked it up" from the Commercial Credit Corporation;

that in their dealings with the Finance Company, when anything was sold on payment plan and repossessed, they had to take it back.

On cross-examination, the defendant Kelley testified in part as follows:

"Q. The only reason you had, Mr. Kelley, was because the Commercial Credit Corporation told you you had to take that car back. That was the only thing that amounted to anything with you wasn't it? A. Yes. * * *

"Q. Now, Mr. Kelley, was there some argument as a result of Mrs. Kelley sending the car back to Butte and refusing to take it when the first agent for the Commercial Credit Corporation brought it over? A. Some argument?

"Q. Some argument or dispute about it? A. Not that I know of.

"Q. I mean with you afterwards, after it was sent back to Butte? A. I said I wouldn't accept it in that condition if it was like she said it was.

"Q. But you changed your mind on that? A. After we read the contract.

"Q. Who read the contract? A. My wife.

"Q. And you and she read the contract together? A. Yes sir.

"Q. And you came to the conclusion you would have to take it back? A. Yes sir, that's right.

"Q. So you desisted from your refusal and you took it back? A. Yes sir.

"Q. Because you believed you were compelled by that contract to accept it back? A. That's right.

"Q. If they offered it to you? A. Yes sir.

"Q. And they were offering it to you and insisting that you take it back weren't they? A. That's right."

Harold H. Pitts, the office manager and assistant treasurer of the Commercial Credit Corporation, in his deposition, testified in part that the records of the Commercial Credit Corporation showed that the automobile was repossessed on July 25,

1942, and that "the car was taken delivery on" by Kelley about August 9, 1942, and that the car was put in condition by Kelley and re-sold on December 22, 1942, for $450, and part of the sale money went to the Commercial Credit Corporation and part to Kelley.

The court properly instructed the jury on this question as follows: "Instruction No. 3. You are instructed that if you find from the evidence that the defendant, Commercial Credit Corporation, did on or about August 6, 1942, in good faith sell to the defendant, Shelby J. Kelley, the automobile in controversy herein, and that said sale was consummated, and that the defendant, Commercial Credit Corporation, parted with title therein, then you are instructed to find your verdict in favor of the defendant, Commercial Credit Corporation.

"Instruction No. 3-A. You are instructed that if you find from the evidence that the defendant, Shelby J. Kelley, purchased the automobile in question in good faith on or about the 6th day of August, 1942, and took possession of said automobile as his own property, then you are instructed to find your verdict in favor of the defendant, Shelby J. Kelley."

The jury found the issue against the defendants. Though the evidence was conflicting there was sufficient evidence to support this finding. "It is the well-established and long-settled rule in this state that where the evidence is conflicting a new trial will not be granted, the jury being the triers of issues of fact." Rousselle v. Cramer, 65 Mont. 537, 542, 212 Pac. 294, 296.

The next question to be determined is whether or not the defendants acted together in selling the automobile on December 22, 1942, and appellant assigns error in the trial court's giving of Instruction No. 7, reading: "You are instructed that if the sale of plaintiff's car made on December 22, 1942, resulted not from the free choice of the defendant Shelby J. Kelley, but by reason of the insistence of the defendant Commercial Credit Corporation, such sale was the joint act of both defendants."

482

The word "joint" is defined to mean "produced by or involving the combined action of two or more; united in or having a common relation, action, or interest; participated in or used by two or more; held or shared in common." Vol. 23, Words and Phrases, Perm. Ed., p. 43.

Furthermore, the court in Instructions Nos. 9, 10 and 11 covered this question with additional proper instructions and it is not reversible error that one instruction, standing alone, is not as full or accurate as it might have been where instructions fairly tendered the case to the jury, and instructions must be considered in their entirety. Koppang v. Sevier, 106 Mont. 79, 75 Pac. (2d) 790.

The instructions covering this question were fair and proper. The jury found the issue against the defendants. There was sufficient evidence to justify such finding.

The next question to be determined is whether or not the defendants in acting together in selling the automobile on December 22, 1942, exercised any right or option under the conditional sale contract covering the automobile.

Paragraph 6 of the conditional sale contract reads in part as follows: "In the event of such repossession Seller may resell the said property at either public or private sale without demand for performance, with or without notice to Purchaser (if given notice by mail to address below shall be sufficient) with or without having such property at the place of sale, and upon such terms and in such manner as Seller may determine; Seller may bid at any sale."

. The court properly instructed the jury on this point, Instruction No. 9 reading as follows: "You are instructed that the exhibit in evidence in this case, marked Exhibits 1, 1-A and entitled 'Conditional Sale Contract', is, and was, at all times from and after October 6, 1942, a contract for the purchase of personal property within the meaning of the Act of Congress referred to in the next preceding instruction, and if you find that the defendants, or either of them, during the time that the plaintiff was in the military service, and after October 6, 1942,

sold said car in reliance upon Paragraph 6 of said 'Conditional Sale Contract' and without having brought an action in some court to authorize or permit a sale to be made, your verdict must be for the plaintiff.'' The jury found the issue against the defendants and there was sufficient evidence to support such finding.

Appellants' contention that plaintiff had no interest in the ▮ automobile or in the conditional sale contract after the automobile had been repossessed by the Commercial Credit Corporation on July 25, 1942, cannot be sustained. The conditional sale contract reads in part as follows:

''The undersigned Seller hereby agrees to sell, and the undersigned Purchaser agrees to purchase, subject to the terms and conditions hereinafter set forth, \* \* \*

''6. Time is of the essence of the contract and if Purchaser defaults in complying with any of the terms or conditions hereof, or Seller deem himself insecure or the property in danger of misuse, depreciation or confiscation, (of which Seller shall have the sole right to judge), or if a proceeding in bankruptcy, receivership or insolvency or for composition or extension of debts or other obligations be instituted by or against any Purchaser or his property, the full amount then unpaid hereunder shall become immediately due and payable without notice and Seller or agent or any sheriff or other officer of the law, may take immediate possession of the said property without demand (possession by Purchaser after default being unlawful) including any equipment or accessories thereto and for this purpose Seller may enter upon the premises where said property may be and remove same. In the event of such repossession Seller may resell the said property at either public or private sale without demand for performance with or without notice to Purchaser (if given notice by mail to address below shall be sufficient) with or without having such property at the place of sale, and upon such terms and in such manner as Seller may determine; Seller may bid at any sale. *The proceeds of any such sale, after deducting all liens, expenses for re-*

*taking, repairing and selling such property, including a reasonable attorney fee or other expense incurred, shall be applied to the amount due under this contract and the surplus, if any, ·shall be paid to Purchaser;* in the event of a deficiency remaining after the exercise of any of the remedies herein provided for Purchaser agrees to pay the amount of such deficiency forthwith and any reasonable attorney fee and court costs incurred for the recovery of such deficiency.'' (Emphasis ours.)

The defendants exercising a right or option under the contract, to-wit: The sale of the automobile on December 22, 1942, to Seavey; the plaintiff under the terms and conditions of the contract would have been entitled to receive any surplus of the proceeds of the sale, consequently the contract was not *terminated* before the date of the sale, which date was subsequent to the enactment of the amendment to the Soldiers' and Sailors' Civil Relief Act.

The word ''terminate'' is defined ''to put an end to; to make to cease; to end; as, to terminate an effort, or a controversy.'' Webster's New International Dictionary.

Having determined that defendants acted together in selling the automobile on December 22, 1942, under a right or option under the conditional sale contract, we now come to the question as to whether or not the sale of the automobile without a court order was a violation of the rights of the plaintiff who was then in military service.

The court properly instructed the jury in the law on this point. Instruction No. 11 reads: ''You are instructed that if you find from the evidence that the defendants, acting together and in violation of the plaintiff's rights sold the automobile in controversy on or about December 22, 1942, without first having proceeded in a court of competent jurisdiction, or in any court whatever, and obtained a judgment or order authorizing them to make such a sale, our verdict must be for the plaintiff and against both said defendants.''

The Soldiers' & Sailors' Civil Relief Act, as amended October 6, 1942, reads in part as follows: ''No person who has

received, or whose assignor has received, under a contract for the purchase of real or personal property, or of lease or bailment with a view to purchase of such property, a deposit or installment of the purchase price, or a deposit or installment under the contract, lease, or bailment, from a person or from the assignor of a person who, after the date of payment of such deposit or installment, has entered military service, shall exercise any right or option under such contract to rescind or terminate the contract or resume possession of the property for nonpayment of any installment thereunder due or for any other breach of the terms thereof occurring prior to or during the period of such military service, except by action in a court of competent jurisdiction.'' U. S. C. A., Title 50, sec. 531.

Though repossession of the automobile had been made prior to October 6, 1942, the date of the amendment to the Soldiers' & Sailors' Civil Relief Act, the sale of the automobile and the termination of the contract by the defendants were subsequent to October 6, 1942, and at a time when Hampton was in military service; and the sale and the termination of contract having been made by the defendants without any action of court of competent jurisdiction, were therefore, contrary to the provision of the federal statute cited above and constituted a violation of the serviceman's (Hampton's) rights.

In the case of Application of Aber, 180 Misc. 736, 40 N. Y. S. (2d) 48, 49, the court said as follows: ''The seizure of petitioner's car occurred prior to the effective date of the 1942 amendments to the Soldiers' and Sailors' Civil Relief Act of 1940, 50 U. S. C. A. Appendix, sec. 501 et seq. * * *

''Petitioner is, however, entitled to the granting of his motion in so far as it seeks to set aside the notice of sale. The 1942 amendment, which took effect after the seizure and before the date fixed for the proposed sale, provides (Section 10, 50 U. S. C. A. Appendix sec. 532) that 'No sale * * * of property for nonpayment of any sum due under any such obligation (referring to obligations specified in Section 302(1) as amended in 1942) * * *, whether under a power of sale, under a judg-

ment entered upon warrant of attorney to confess judgment contained therein, or *otherwise,* shall be valid if made after the date of enactment of the Soldiers' and Sailors' Civil Relief Act Amendments of 1942 * * * and during the period of military service * * * unless upon an order previously granted by the court and a return thereto made and approved by the court.' (Italics the court's.)

"The obligations referred to in the above quotation, under the terms of the 1942 Amendments to Section 302(1) of the 1940 Act, included petitioner's obligation to the respondent. See Section 9, subd. b of the 1942 Act. Petitioner, a member of the Enlisted Reserve Corps, has been ordered to report for 'military service', within the meaning of Section 106, added by the 1942 Act, 50 U. S. C. A. Appendix sec. 516, for 'military service', as defined in the 1940 Act, includes 'training or education under the supervision of the United States preliminary to induction into the military service.'

"It follows that the proposed sale of the car without a court order is unauthorized and would, if consummated, constitute a violation of petitioner's rights under the 1942 statute."

The courts have adopted a liberal construction of the Soldiers' and Sailors' Civil Relief Act in favor of persons in military service, as shown by the following "Notes of Decisions" from Title 50 U. S. C. A. sec. 510, note 3.

"McKinney's N. Y. Military Law, sec. 300 et seq. and section 501 et seq. of this Appendix must be construed to accomplish their purpose to relieve from the consequences of handicaps and pre-existing obligations, to the end that entire energies may be devoted to military duties. Jaworski v. McCloskey, Sup. 1944, 47 N. Y. S. (2d) 26, affirmed 267 App. Div. 981, 48 N. Y. S. (2d) 799.

"The remedial provisions of section 501 et seq. of this title must be construed liberally in order to accomplish the broad objectives of Congress. New York Life Ins. Co. v. Litke, 1943, 181 Misc. 32, 45 N. Y. S. (2d) 576.

"Act must be liberally construed in favor of rights of men

engaged in military service. Hellberg v. Warner, 1943, 319 Ill. App. 117, 48 N. E. (2d) 972; Modern Industrial Bank v. Grossman, 1943 [180 Misc. 415], 40 N. Y. S. (2d) 628; In re Bashor, 1943, 16 Wash. (2d) 168, 132 Pac. (2d) 1027. * * *

"Section 501 et seq. of this Appendix should be construed liberally to effect its purpose to protect both the nation and interests of those engaged in its defense. Semler v. Oertwig, 1943 [234 Iowa 233], 12 N. W. (2d) 265.

"Section 501 et seq. must be liberally construed to accomplish its purpose. Young v. Evans [62 Cal. App. (2d) 365], 144 Pac. (2d) 651.

"Section 501 et seq. of this Appendix are to be liberally construed. McArthur v. Shaffer, 1943, 59 Cal. App. (2d) 724, 139 Pac. (2d) 959. * * *

"A liberal construtcion must be given to the provisions of this Act, to the end that all rights and interests of anyone serving in the armed forces may be fully safe-guarded. Reynolds v. Haulcroft, 1943, 205 Ark. 760, 170 S. W. (2d) 678."

As to the question of compensatory damages which the jury ▮ fixed in the sum of $1,000, the evidence shows that the total conditional sale contract price of the automobile was $1,408 of which amount Hampton had paid by the turning in of his old car, the sum of $400 and by cash installment payments, $631.20 or a total of $1,031.20. Though the evidence was conflicting as to what would have been the reasonable value of the car at the time of trial, the jury's findings as to the amount of compensatory damages will not be disturbed by this court.

However, as to the jury's assessment of exemplary damages ▮ against the defendants in the sum of $1,000, the evidence does not show that the defendants, or either of them, were guilty of oppression, fraud or malice, either actual or presumed, and consequently there is no justification for any exemplary damages. De Celles v. Casey, 48 Mont. 568, 139 Pac. 586.

The court has considered all of the assignments of error of bother appellants and other than those which apply to the

awarding of exemplary damages, the court is of the opinion that the other claims of error are not material.

The cause is remanded with directions that the judgment be reduced by the sum of $1,000 exemplary damages and, as thus modified, the judgment will stand affirmed.

Each party shall pay its costs of this appeal.

Associate Justices Morris, Adair, and Angstman, concur.

Mr. Justice Cheadle (dissenting).

While of course the provisions of the Soldiers' and Sailors' Civil Relief Act should be given a liberal construction to the end that rights and interests of persons serving in the armed forces may be safeguarded, it is my view that the facts of the transaction in question do not bring this case within the Relief Act.

The original Act of 1940 has no application because this transaction was entered into subsequent to its enactment. Plaintiff bases his right to recovery under the amendment of October 6, 1942, appearing in Section 531 as follows:

"(1) No person who has received, or whose assignor has received, under a contract for the purchase of real or personal property, or of lease or bailment with a view to purchase of such property, a deposit or installment of the purchase price, or a deposit or installment under the contract lease, lease, or bailment, from a person or from the assignor of a person who, after the date of payment of such deposit or installment, has entered military service, *shall exercise any right or option under such contract to rescind or terminate the contract or resume possession of the property* for nonpayment of any installment thereunder due or for any other breach of the terms thereof occurring prior to or during the period of such military service, except by action in a court of competent jurisdiction." (Emphasis mine.)

It is undisputed that the automobile in question was repossessed by the defendant Commercial Credit Corporation on July 25, 1942, some months prior to the effective date of the 1942 amendment of the Relief Act. Such repossession was made

also prior to the date on which plaintiff was inducted into the military service. Therefore, it follows that the contract was completely terminated or rescinded before the 1942 amendment was in effect. It is my view that the ultimate sale of the automobile on December 22, 1942, to Seavey constituted no part of the rescission or termination of the contract.

In no event should the defendant Kelley be held liable to the plaintiff for damages alleged to have resulted from the transaction in question. The assignment of the conditional sale contract from defendant Kelley to Commercial Credit Corporation effectively transferred all of the interest of Kelley in the contract and also in the automobile. The assignment contains the following transfer clause: ''For value received, the contract (on the reverse side hereof) between purchaser and the undersigned, and all right, title and interest of the undersigned in and to the property therein described, together with all moneys due or to become due and payable thereunder are hereby sold, assigned and transferred by the undersigned to Commercial Credit Corporation, a corporation, its successors and assigns. This assignment is made without recourse in consideration of the following warranties: * * *''

Upon the execution of this assignment the defendant Kelley had no further interest in either the car or the contract, and all dealings under the contract were thereafter had between plaintiff and the Commercial Credit Corporation. It is true that subsequent to the repossession the automobile was sold by Commercial Credit Corporation to the defendant Kelley, but such sale in nowise makes the latter responsible under the Soldiers' and Sailors' Relief Act, any more so than had the sale been made to a stranger. It is true also that the court instructed the jury as to the liability of the defendants if it should find that the defendants acted jointly in the sale of December 22nd. Such instructions were erroneous, however, because entirely unjustified by the evidence. Subsequent to the repossession, a new certificate of title to the automobile in question was issued by the registrar of motor vehicles to Commercial Credit Corpora-

tion and that corporation thus became the absolute owner. Certainly by the repossession and such transfer of title the conditional sale contract was fully terminated. Since the termination was effected prior to the effective date of the Relief Act, that Act cannot apply. As is said in the Arkansas case of Ellis v. Smithers, 206 Ark. 247, 174 S. W. (2d) 568, 570, ''There is no dispute that, at the time appellees repossessed the refrigerator, appellant was behind three monthly installments. Under the contract, therefore, appellees had the right to repossess the property with or without notice and without legal process. Possession was obtained by appellees peaceably and without fraud. The applicable rule, under the facts here, is stated in 55 C. J., page 1287, sec. 1313, b.-(1), 'The conditional seller's right to possession of the goods sold on default of the buyer may be exercised without recourse to the courts by retaking possession provided this can be done peaceably; and this is especially true where the contract expressly so provides. The seller is not deprived of this right merely because he attempts to exercise it by void writ of replevin, or seizure.' ''

The Court also later said:

''Finally, appellant argues that he 'was protected by the provisions of the Soldiers' and Sailors' Civil Relief Act of 1940. (50 U. S. C. A., Appendix, sec. 501 et seq.), for the postponement of suits, * * * reposession, payments under installment purchases and conditional sales, etc.' We think it clear, however, that appellant was not entitled to the protection claimed, under the plain terms of the act in question. (Sections 531, 532.)

''The act protects only those who are already obligated when the act was approved and became effective, and did not apply to those who became obligated after its effective date, and then went into the Armed Forces. Appellant became obligated, on the contract here, October 18, 1941, approximately a year after the effective date of the Soldiers' and Sailors' Civil Relief Act of October 17, 1940, supra.

''Nor can the above act, as amended October 6, 1942 (said

amendment being entitled 'The Soldiers'· and Sailors' Civil Relief Act, Amendments of 1942'), afford any relief to appellant for the reason that the refrigerator in question was repossessed by appellees some time between July 30th and August 2, 1942, prior to the approval, and effective date, of the amendment, supra, on October 6, 1942.''

I think that the Aber case relied upon by the plaintiff is not applicable to the transaction under consideration. The nature of the instrument involved in that case is not disclosed by the decision, but apparently it was in the nature of a chattel mortgage. That case went no further than to hold that the proposed sale of the automobile in question, notice of which had been given, would constitute a violation of petitioner's rights under the 1942 statute. The court said [180 Misc. 736, 40 N. Y. S. 49] :

''Petitioner is, however, entitled to the granting of his motion in so far as it seeks to set aside the notice of sale. The 1942 amendment, which took effect after the seizure and before the date fixed for the proposed sale, provides (Section 10, 50 U. S. C. A. Appendix, sec. 532) that 'No sale * * * of property for nonpayment of any sum due under any such obligation (referring to obligations specified in Section 302 (1) as amended in 1942) * * *, whether under a power of sale, under a judgment entered upon warrant of attorney to confess judgment contained therein, or *otherwise,* shall be valid if made after the date of enactment of the Soldiers' and Sailors' Civil Relief Act Amendments of 1942 * * * and during the period of military service * * * unless upon an order previously granted by the court and a return thereto made and approved by the court.' (Italics the court's.) ''

The judgment should be reversed and the cause remanded with direction to dismiss the amended complaint.

Supplemental Opinion on Rehearing.

Mr. Chief Justice Lindquist delivered the supplemental opinion.

On rehearing the appellants contend that the repossession of the automobile on July 25, 1942, after the default of Hampton, completely terminated the conditional sale contract and that, consequently, the Soldiers' and Sailors' Civil Relief Act as amended October 6, 1942, 50 U. S. C. A. Appendix, sec. 501 et seq., has no application.

With this contention we cannot agree.

After the repossession of the automobile the contract (subject to applicable statutes) still measured the rights and remedies of the parties thereto, and it was to the terms of the contract that the parties had to resort, or rely upon, in asserting any claims or rights after repossession.

In this case repossession of the automobile was had under a claim of right under the contract.

Possession of the automobile by the defendants after repossession was under a claim of right under the contract.

Sale of the automobile by the defendants after repossession and during possession was under a claim of right under the contract.

Application of the proceeds of sale by the defendants was under a claim of right under the contract.

The defendants relied upon the terms and conditions of the contract for repossession, possession, sale and application of proceeds of sale.

The contract further provided that any surplus of the sale should be paid to the purchaser and also provided that the purchaser would be liable for any deficiency.

Had there been any surplus the defendants would have been obliged to pay this surplus to the plaintiff and the plaintiff would have had the right to demand such surplus.

Had there been any deficiency and this deficiency claimed aaginst the plaintiff, the plaintiff having paid more than one-third of the purchase price, he would have had the right to defend against any such deficiency claimed. (Sec. 7597, Rev. Codes of Montana, 1935.)

It follows that the rights and remedies of the parties under

the contract were not completely extinguished at the time of the repossesion of the automobile. "When the law speaks of a right or obligation as extinguished, it means that it is put out; taken away, destroyed." 35 C. J. S., Extinguish, page 293.

It also follows that the contract was not completely terminated by the repossession of the automobile. " 'Termination' or 'cancellation' of a conditional contract means to abrogate so much of it as remains unperformed, doing away with an existing agreement upon the terms and with the consequences mentioned in the writing * * *." Sanborn v. Ballanfonte, 98 Cal. App. 482, 277 Pac. 152, 155.

"The termination of a conditional contract, as stated in the case of Sanborn v. Ballanfonte, 98 Cal. App. 482, 277 Pac. 152, means to put an end to all of the unperformed portions thereof." Blodgett v. Merritt Annex Oil Co., 19 Cal. App. (2d) 169, 65 Pac. (2d) 123, 125.

It is clear that the conditional sale contract was not fully terminated prior to December 22, 1942, for the reason that the defendants having sold the automobile on the above date, the rights, liabilities and remedies of the parties were not fully determined or terminated under the contract until that time and therefore the Soldiers' and Sailors' Civil Relief Act applies.

The other points which were raised on rehearing by both the appellant and respondent have been treated in the original opinion of the majority of the court, to which we adhere.

Therefore, the original opinion rendered in this case stands, together with this supplemental opinion.

Let remittitur issue forthwith.

Associate Justices Morris, Adair, and Angstman, concur.

Mr. Justice Cheadle.

I remain convinced that the majority opinion is erroneous, as I attempted to point out in my dissent thereto. I would be the last to deny to the veteran every ligitimate benefit afforded by law, and I think that any reasonable doubt as to the definition of his rights should be resolved in his favor. But, as stated, I

494

feel that the transaction here involved does not come within the purview of the Soldiers' and Sailors' Civil Relief Act. Unfortunately the decision will affect all conditional vendors, including veterans who may be in the business of selling merchandise on the installment plan, and will result in confusion as to the rights and obligations under similar contracts. To avoid future confusion, I feel that such rights and obligations should be expressly defined by statute, such as the Uniform Conditional Sales Act. Certainly, all conditional vendors in business in this state, including those whose contracts have been completely transferred, must remain in doubt as to their liability, and under constant threat of damage actions.