**HALTOM OIL COMPANY (formerly Haltom-Murphy, Inc.), Appellant,**

v.

**PHILLIPS PETROLEUM COMPANY, Appellee.**

**No. 19357.**

United States Court of Appeals
Fifth Circuit.

June 20, 1962.

Rehearing Denied July 23, 1962.

D. B. Kultgen and Beard, Kultgen & Beard, Waco, Tex., for appellant.

Hilton E. Howell, Louis S. Muldrow, and Naman Howell, Smith & Chase, Waco, Tex., for appellee.

Before HUTCHESON, RIVES, and BELL, Circuit Judges.

GRIFFIN B. BELL, Circuit Judge.

This appeal is from the dismissal of a complaint alleging breach of contract on the ground that the terms were clear and unambiguous and would not sustain the contention of appellant.

Phillips is a producer and manufacturer of petroleum products and appellant was the jobber of Phillips products in the Waco area. Phillips purchased a group of stations and a bulk storage plant in Waco from Arkansas Fuel Company after appellant became jobber and in turn leased the stations and sold the bulk plant and the equipment at the stations to appellant. Appellant operated on both the wholesale and retail level in the sale of gasoline products, making sales from stations it owned, from others leased from Phillips, and from other owned by third parties.

Appellant paid Phillips $33,358.06 for the Arkansas Fuel stations equipment, being $3,358.06 in cash with the balance being represented by a promissory note in the amount of $30,000 which note was secured by mortgage. About a year thereafter the parties decided to terminate their relationship and entered into the contract in dispute here containing numbered paragraphs with the first paragraph stating that the contract was for the purpose of mutually cancelling all contracts and agreements between the parties arising out of the jobber relation-

ship. The contract was in the form of a letter, prepared by Phillips, and written by appellant to Phillips.

█ A reading of the contract indicates that each substantive paragraph was independent and distinct in that each covered some separate aspect of the relationship. We need set out only paragraph three verbatim but paragraph two dealt with certain stations and provided for their disposition and the consideration therefor. Paragraph four disposed of a dispute over an option in consideration of the entire agreement. Paragraph five obligated Phillips to repurchase merchandise theretofore sold to appellant. Paragraph six concerned a paint contract and required appellant to reimburse Phillips the cost of painting certain stations. Paragraph seven provided for payment by appellant to Phillips of past due rentals. Then under paragraph eight appellant agreed to pay Phillips all indebtedness due on or prior to the execution of the instruments involved in the entire agreement. Paragraph three, the subject matter of this controversy provided:

"(3) Phillips Petroleum Company has heretofore sold and conveyed to Haltom-Murphy, Inc., a bulk station and certain personal property and equipment, the purchase price of which was covered by a promissory note and various security instruments including a Deed of Trust and Chattel Mortgage. These properties and equipment are known by the parties as the Arkansas Fuel property and equipment. Phillips Petroleum is to purchase from Haltom-Murphy, Inc., *for a total consideration of $30,000.00* said property and equipment subject to any downward adjustment pursuant to an inventory of equipment in existence. For these purposes, the parties agree to use the oil industries code for a determination of the market value of the properties which are unaccounted for. Phillips Petroleum Company agrees to cancel said note covering Haltom-Murphy, Inc.'s pur-

chase price of this property and equipment. (Emphasis added.)"

Prior to the various closings under the agreement a dispute arose as to the meaning of this paragraph. Appellant contended that Phillips was to pay it $30,000 in addition to cancelling the balance due on the note in the amount of $22,247.53. Phillips took the position that the balance due it on the note was to be set off or credited against the payment by it of the $30,000.00, and these contentions make the issue here.

Paragraph three is the only portion of the entire contract dealing with the Arkansas Fuel properties transaction, and is independent and complete within itself. The last or cancellation sentence in the paragraph is: "Phillips Petroleum Company agrees to cancel said note covering Haltom-Murphy, Inc.'s purchase price of this property and equipment." We must decide whether this sentence relates, as Phillips contends, to the other provisions in paragraph three which have only to do with the properties covered by the promissory note and mortgage and for which Phillips was to pay a total consideration of $30,000 as the repurchase price, or whether it relates to the entire contract as appellant contends.

█ Under the first alternative there is no ambiguity. The total consideration for repurchase was to be $30,000 with the cancellation of the note being a part of that consideration. If, on the other hand, it applies to the entire agreement, the total consideration is $52,247.53. To adopt the contention of appellant makes it necessary to disregard the language "total consideration of $30,000.00" in paragraph three. We cannot put aside or ignore these words and thus the contract must be construed in the light of them. Pure Oil Company v. Petrolite Corp., 5 Cir., 1946, 158 F.2d 503. Neither can we add language for the parties as we would have to do to make this paragraph read that Phillips was to pay $30,000 cash and cancel the note in addition. Harrison v. Fortlage, 1896, 161 U.S. 57, 16 S.Ct. 488, 40 L.Ed. 616; Chicago, R. I. & P. Ry. Co. v. Maryland Casualty Co., 8 Cir., 1935,

75 F.2d 596; and 12 Am.Jur., Contracts, § 228. Furthermore, to apply the cancellation sentence to the whole contract would be to create an ambiguity for paragraph eight provides that appellant will pay all of its debts to Phillips, the opposite of the language of the cancellation clause. This would render the entire contract ambiguous whereas applying the cancellation sentence only to paragraph three leaves that paragraph without ambiguity and the entire contract as well.

No ambiguity appearing in the contract and no other error appearing the judgment is

Affirmed.

RIVES, Circuit Judge (dissenting).

The majority has concluded that the contract in question is unambiguous because: 1) "A reading of the contract indicates that each substantive paragraph was independent and distinct in that each covered some separate aspect of the relationship", and 2) to rule that the purchase-price note should be cancelled in addition to the payment of $30,000.00 specified in paragraph No. 3 would be to create a "total consideration of" $52,-247.53—a result in conflict with the express language of that paragraph. I cannot agree since this conclusion rests upon the unsupported and mistaken assumption that, because each paragraph dealt with a distinct and separate relationship between the parties, the consideration for the agreement was also fragmentized and distinctly allocated to each paragraph. Such an assumption seems contrary to the whole nature of the agreement. For, as stated in paragraph No. 1, the purpose of the agreement was a mutual termination of all contractual relations between the parties. Thus no one paragraph may be considered to stand completely independent as if the parties would be willing to carry it out in the absence of the other paragraphs; and the consideration for any one paragraph must be looked at in terms of the whole agreement. In fact, paragraph No. 4 specifically so implies when it states that Haltom-Murphy's release of

any claim to the Option of Purchase on property at 14th and Austin in Waco-Texas, is as "part of the consideration for this entire agreement." Thus it is reasonable to conclude that cancellation of the note in question may also be a "part of the consideration for this entire agreement" and have no relation to the repurchase price put on the Arkansas Fuel property and equipment in paragraph No. 3. In the absence of specific language resolving this uncertainty, I do not see how the issue can be anything but ambiguous.

This basic ambiguity on the allocation of consideration is augmented by analysis of the very language in question—that "Phillips Petroleum Company agrees to cancel said note * * *." If no mention of the note had been made, then paragraph No. 8 (whereby Haltom-Murphy agreed to pay all outstanding indebtedness) would require that it be paid off. Since the appellee's interpretation of the cancellation language does no more than require payment by offsetting the note against the $30,000.00, it would appear that the agreement to cancel the note is surplusage. If, on the other hand, the added agreement to "cancel" were construed as intending a discharge of the note without payment, substantial meaning would attach.

Moreover, the use of the word "cancel" specially lends itself to such a construction. Under Texas law, a contract is to be construed giving technical words their technical meaning. Magnolia Warehouse & Storage Co. v. Davis & Blackwell, 108 Tex. 422, 195 S.W. 184 (1917); Frost v. Martin, 203 S.W. 72 (Tex.Civ.App. 1918). Under Article 5939 of the Texas Civil Statutes, "intentional cancellation thereof by the holder" is one of the means for the discharge of a negotiable instrument. The most complete definition of "cancellation" by a Texas court is to be found in Hickox v. Hickox, 151 S.W.2d 913, 917–918 (Tex.Civ.App. 1941), where the court said:

"We have been unable to find a satisfactory definition of the term 'cancellation,' as used in the statute.

Cancellation of a negotiable instrument is a manifestation by act of intention with reference thereto to render same inefficacious as a legal obligation. This act manifesting the intention may take several forms; for instance, the surrender of the instrument to the obligor, the erasure of the signature of the obligor, destruction of the instrument, or the marking of same cancelled. It is not necessary that a cancellation be supported by a consideration. 10 C.J.S., Bills and Notes, § 475, p. 1035."

Most states seem to agree that a "cancellation" means an abrogation of any duties under the contract remaining unperformed, F. & M. Drilling Co. v. M. & T. Oil Co., 192 Okl. 372, 137 P.2d 575; Hampton v. Commercial Credit Corp., 119 Mont. 476, 176 P.2d 270, and some have gone so far as to say that "cancellation" is inconsistent with payment, Brown v. Gibson's Ex'r., 107 Va. 383, 59 S.E. 384, 386. It would appear clear, then, that "cancellation" of a note is often used to indicate discharge by some means other than full monetary satisfaction and that if the parties here intended to discharge the note without payment in consideration for the entire agreement, then "cancellation" would be the most appropriate term to use. Since the appellant's interpretation of the agreement not only avoids making the language in question surplusage but accounts for the technical language used, I cannot help but conclude that, at the very least, the agreement is reasonably susceptible to more than one meaning.[1]

The appellee also claims that the appellant's interpretation of the contract would require the language "for a total consideration of $30,000.00" to read "payment of $30,000.00 *cash*." However, the language actually used is perfectly consistent with the appellee's view that the indebtedness referred to in paragraph No. 8 might be offset against the $30,000.00.

I think that the contract is ambiguous and that evidence is needed to resolve the ambiguity. I therefore respectfully dissent.

---

1. " * * * if after applying established rules of interpretation to the contract it remains reasonably susceptible to more than one meaning it is ambiguous, but if only one reasonable meaning clearly emerges it is not ambiguous." Universal C.I.T. Credit Corp. v. Daniel, 150 Tex. 513, 1951, 243 S.W.2d 154, 157.