[Civ. No. 4099. Second Appellate District, Division Two.—November 10, 1925.]

## R. YOUNG, Appellant, v. M. P. FLICKINGER, Respondent.

[1] Sales — Right of Rejection — Intent — Construction of Contract—Anticipatory Breach.—Where a contract for the sale of two carloads of cocoanut meal, to be shipped one carload at a time upon two specified dates, provides that "rejection" on the part of the buyer "of the whole or part of the shipment will cancel the contract, in proportion, without claim for loss or damage," and it appears that the word "shipment" is used as being synonymous with or the equivalent of the word "order," the buyer has the right, after receiving one of the carloads and before the time to ship the second carload has arrived, to notify the seller that he will not accept said remaining carload, and his act in so doing, thereby canceling the contract as to that carload, does not amount to an anticipatory breach of the contract of sale.

(1) 35 Cyc., p. 127, n. 64.

APPEAL from a judgment of the Superior Court of Kern County. T. N. Harvey, Judge. Affirmed.

The facts are stated in the opinion of the court.

C. L. Claflin, R. B. Lambert and Fred L. Dreher for Appellant.

Irwin & Laird for Respondent.

FINLAYSON, P. J—This is an action to recover damages alleged to have been sustained by plaintiff's assignor by reason of defendant's refusal to accept and pay for a carload of cocoanut meal purchased by defendant. Plaintiff, who was nonsuited in the court below, appeals from the judgment of nonsuit. The appeal turns upon the construction of the written contract for the sale of the meal.

The firm of Lewis-Simas-Jones Co., a copartnership, has its principal place of business at San Francisco. Defendant's place of business is in Bakersfield. On May 29, 1920, at Bakersfield, defendant and the copartnership executed a written contract which reads:

"Lewis-Simas-Jones Co., 429 Davis Street, San Francisco.
                "Bakersfield, Cal., May 29, 1920.
    "Confirms sale to M. P. Flickinger on the following terms
        and conditions:

| "Commodity: | Cocoanut | New Sacks |
|---|---|---|
| Amount: | 2 cars | Net Wt. |
| Price: | $47.00 per Ton, f.o.b. San Francisco. | |

Quantity:
Shipment: Oct. 1920 and Dec. 1920.
                Subject to change 2 weeks notice.
Payment: 30 days Acceptance.

"Sellers are not responsible for delays or defaults for shipment of the whole or part thereof, arising from strikes, car-shortage, wars, revolutions, loss or damage in transit, or any other contingencies beyond their control. Rejection on your part of the whole or part of the shipment will cancel the contract, in proportion, without claim for loss or damage. This contract is not assignable.

                        "LEWIS-SIMAS-JONES Co.
                            "By FITCH.
    "Accepted: M. P. FLICKINGER."

On October 4, 1920, Lewis-Simas-Jones Co. shipped the first of the two carloads to defendant, who accepted that carload and paid for it according to the terms of his contract. On November 24, 1920, defendant notified Lewis-Simas-Jones Co. that he would not accept the remaining carload, which, under the terms of the contract, was to be shipped, i. e., delivered to the railroad carrier f. o. b. at San Francisco, in the month of December following. Because of the receipt

of this notice, Lewis-Simas-Jones Co. made no attempt to ship or to deliver or to tender the second carload, but, claiming to have a cause of action against defendant for breach of the contract on his part, that firm assigned its claim for damages to plaintiff, who later brought this action. The trial court held that the notice given by defendant on November 24, 1920, that he would not accept the second carload was justified by that clause of the contract which reads: "Rejection on your [defendant's] part of the whole or part of the shipment will cancel the contract, in proportion, without claim for loss or damage." It is contended by appellant that by this clause respondent was given no greater right than that of rejecting the whole or a part of the shipment after it had actually been made, and that therefore respondent's notice amounted to an anticipatory breach of his contract.

It is evident that the right given to respondent to reject the shipment, or any part of it, was intended to be much more inclusive than a mere right to reject because of the unsoundness or unmerchantability of the meal. The commodity was inaccessible to an examination by respondent at the time when the contract was entered into. There was therefore an implied warranty on the part of appellant's assignor that the meal, when delivered, should be sound and merchantable. (Civ. Code, sec. 1771.) Respondent, therefore, quite apart from any right expressly conferred upon him by the contract, would have had the right to reject the whole or any part of the shipment if, upon delivery, it proved to be unsound or unmerchantable. Obviously, the contract must have been intended to clothe respondent with a more comprehensive right of rejection than that which the law would have recognized in him had the written instrument been silent upon the subject. It would seem, therefore, that it was the intention of the parties to confer upon respondent the right to reject the whole or any part of the shipment for any *bona fide* reason whatever. For example, respondent's inability to realize profits on resales, by reason of declining market prices, might constitute a valid ground for the rejection of the shipment. Not only was respondent's right of rejection thus comprehensive, but it also involved the right to "cancel" the contract to the extent that it calls for the rejected shipment or the rejected portion

thereof. That is to say, respondent had the right not merely to reject the shipment or any part thereof, but to do away with the contract, to the extent that it calls for the quantity of meal embraced within the rejected shipment or rejected portion thereof. This is precisely what the contract says. It declares that the rejection of the whole or any part of the shipment "will *cancel* the contract, in proportion." By the rejection of the shipment, or a portion thereof, the contract is canceled *pro tanto*—canceled in proportion to the amount of meal rejected. As to such rejected amount, the contract is as completely annulled as if it had never been. To "cancel" a contract means to abrogate so much of it as remains unperformed. It differs from "rescission," which means to restore the parties to their former position. The one refers to the state of things at the time of the cancellation; the other to the state of things existing when the contract was made. "The word 'cancel,'" says the court in *Winton* v. *Spring*, 18 Cal. 451, "applied to the agreement, under the circumstances, means no more than 'doing away with,' an existing agreement upon the terms and with the consequences mentioned in the writing."

But, says appellant, even if the clause in question does recognize a right to reject the shipment for any cause whatever, thereby canceling the contract, or canceling it *pro tanto*, respondent must wait until the shipment has actually been made ere he can exercise his right to reject it or a part of it. Wherefore it is claimed that the notice that the second carload would not be accepted, given, as it was, before the arrival of the time for shipping that carload, was a breach of respondent's contract to purchase two carloads of meal. This argument is plausible, but by no means convincing. It is true that in its primary sense the verb "reject," as its derivation indicates (*re*, back or again, and *jacere*, to throw), means to cast from one; to throw away; to discard. (See Webster's Dictionary.) It also is true that in conformity with this root meaning of the verb, the noun "rejection" has been defined as a failure to accept; the repudiation *of an offer.* (34 Cyc. 1036.) This being the primary meaning, there doubtless would have been ground for holding that the word "rejection" meant the refusal to accept the shipment after it had been started on its journey, or after it had been tendered for acceptance, if that word

had stood in isolation in the contract or if it would have been proper to consider it apart from the situation and evident purpose of the parties. But here the word does not stand in isolation; and it is evident that the parties intended that the right to reject should include more than is ordinarily connoted by the word "rejection." The right which is given to respondent by this contract is not merely a right to reject the shipment or any part thereof. It includes the further right to cancel the contract itself in so far as it calls for the quantity of meal which respondent elects to reject. Moreover, respondent, as we have shown, could exercise his right of rejection, and his right to cancel the contract *pro tanto,* for any and every valid reason. If, then, he was determined to exercise the right, and the circumstances warranted its exercise, what could it boot either party to wait until the shipment had been made, and the expense of delivering the meal to the carrier had been incurred, before respondent exercised his right to reject the shipment and to cancel the contract therefor? Surely, it was not within the contemplation of the parties that so vain a thing should be done, if, when it had been done, it would have to be undone at the expense of the shipper; and undone it would have to be if respondent delayed exercising his undoubted right of rejection and cancellation after the shipment had been made.

It is for these reasons that the writer of this opinion concludes that respondent was well within his right when he gave notice on November 24, 1920, that he would not accept the second carload of meal. It follows, therefore, that the motion for nonsuit was properly granted.

The judgment is affirmed.

WORKS, J., Concurring.—I concur in the judgment, but I think the conclusion should be reached upon reasoning different from that which appears in the opinion of the presiding justice. [1] The crucial sentence of the contract, in the light of the question before us, reads: "Rejection on your part of the whole or part of the shipment will cancel the contract, in proportion, without claim for loss or damage." I think the parties intended the word "shipment" as the equivalent of the word "order" and that the sentence should be read accordingly. The word "shipment" has a well-understood ordinary meaning, there is no doubt, but I think

it is sufficiently elastic to be employed as a synonym for the word "order." That the parties to the contract intended so to wrench the word they used from its usual significance is plain to me upon several considerations. Surely there was here but one order, split for convenience into two parts by the language: "Shipment: Oct. 1920 and Dec. 1920." There having been but one order the parties must have had that order—the entire order—in mind when they employed in the crucial sentence the expression "*the* shipment." If they had intended the word last mentioned in its ordinary sense, they would have written "a shipment," or "either ship-ment," or "any shipment."

Further, the contract throughout bears inherent evidence of having been formulated by the filling out of a stock form, but this fact particularly appears from the manner in which, at the left margin of the instrument, the following words appear, each standing in column below its predecessor: "Commodity" "Amount" "Price" "Quantity" "Ship-ment" and "Payment." It will be observed that nothing was written after "Quantity," as that expression stands in the margin. This circumstance alone is sufficient to stamp the instrument as one made by filling out a stock form. Considering the paper as one so drawn, we inspect more narrowly the language: "Shipment: Oct. 1920 and Dec. 1920." Suppose respondent had purchased but one carload of cocoanut meal, or that the two carloads actually bought were intended to have been "shipped" at one and the same time. The form employed by the seller would have been filled thus: "Shipment: Oct. 1920," if we may assume that to have been the time agreed upon. Under such circum-stances there can be no doubt that the word "shipment," where it appears in the crucial sentence of the contract, would have been the equivalent of the word "order." I cannot perceive that it should have a different meaning, as the actual instrument stands, merely because two dates were inserted after the expression "Shipment," where it appears in column in the margin.

Finally, the contract is more logical if the crucial sentence be read: "Rejection on your part of the whole or part of *the order* will cancel the contract, in proportion, without claim for loss or damage." This argument interlocks with that above advanced concerning the use by the parties of the word "the" before the word "shipment." Not only,

taking the entire phraseology of the contract, does the word "order" fit perfectly the word "the," but the agreement in its entirety seems more consonant with sense if the word "order" be read in the place of the word "shipment." As there was but one order, I can see no good reason for so reading the crucial sentence of the contract as if its terms were to be effective twice—first, to the first carload; second, to the second carload. Such a construction of the sentence is based upon a slavish submission to what, it must be confessed, is the usual and ordinary meaning of the word "shipment." The shackles of such a submission are broken if we attribute to the word the meaning above suggested. It cannot be said that it does not readily lend itself to that meaning. I am convinced that the parties so intended it.

If we so read the crucial sentence of the contract the sole point advanced by appellant at once falls to the ground. The point is stated thus in the opinion of the presiding justice: "It is contended by appellant that by this clause"— what I have termed the crucial sentence of the contract— "respondent was given no greater right than that of rejecting the whole or a part of the shipment after it had actually been made, and that therefore respondent's notice amounted to an anticipatory breach of his contract." With the construction which I would place upon the crucial sentence, this contention is disposed of without the necessity of argument. With that contention respondent's rejection of the cocoanut meal came in the midst of the attempted delivery to him of the full quantity called for by the contract. The fact that it came before the making of the second shipment, taking that word now in its usual and ordinary sense, becomes an utterly immaterial circumstance.

Craig, J., concurred.