[Civ. No. 6694. First Appellate District, Division One.—April 25, 1929.]

SAMUEL SANBORN, Respondent, v. E. BALLAN-FONTE et al., Appellants.

[Civ. No. 6695. First Appellate District, Division One.—April 25, 1929.]

SAMUEL SANBORN, Respondent, v. E. BALLAN-FONTE et al., Appellants.

F. E. Borton and James Petrini for Appellants.

Willis S. Mitchell, T. F. Allen and Henry St. Rayner for Respondent.

LANDIS, J., *pro tem.*—The above-entitled actions were consolidated for the purposes of appeal. Action No. 6694 was tried in and appealed from Los Angeles County and action No. 6695 tried in and appealed from Kern County. The appeals are from the judgments rendered in favor of plaintiff for advance royalties payable monthly which had accrued under two executory contracts whereby plaintiff granted unto defendants, in consideration of the covenants contained in the said contracts, the exclusive right to drill for, produce and market oil and gas from the lands described for a period of twenty years, and all extensions of plaintiff's government lease, less thirty days. There are two contracts involved in each case, and they are identical in form, but cover different lands and provide for different amounts to be paid as monthly advance royalties, and each action covers a different period of time. The following discloses the material portions of the contracts sufficient for the purpose of considering the questions involved, to wit:

"Plaintiff is first party and defendants second parties: Contracts recite that first party has been granted a permit to prospect for oil and gas and to lease under the Act of February 25th, 1920 (Public No. 146), sections 2 and 11 of T. 27 S., R. 18 E., Mt. B. & M. in Kern County, California,

and that second parties are desirous of developing oil and gas on a portion of said lands . . .

"Now, therefore, the first party for and in consideration of the payments, agreements and stipulations hereinafter specified does hereby grant to said second parties the exclusive right to drill for, produce and market oil and gas from the following described portion of said lands pursuant to the terms of said permit and the lease or leases to be hereafter granted by the U. S. Government, to-wit: (Here follows description of the land.)

"In consideration of which the second parties do hereby agree as follows: In substance, to comply with and abide by all the terms and regulations of said permit . . . and with all regulations of the Department of the Interior relating thereto; to furnish such bonds as are required by the United States Government; pay all royalties accruing to the United States Government and pay 93 per cent of all taxes that may be levied against said lands."

It then provides as follows:

"Said second parties agree and are hereby bound unto said first party to install upon said lands a substantial and adequate drilling outfit, and to begin actual drilling operations thereon within sixty days from the date hereof, and to drill diligently and continuously thereon until an aggregate of four wells are completed and brought into production;

"In the event that second parties drill first well to a depth of 2000 feet and oil or gas in commercial quantities is not encountered therein, second parties may, at their option, by a good and sufficient instrument in writing, cancel this contract and abandon lands covered thereby, without any further obligations to first party;

"Said second parties agree and are hereby bound unto the said first party to pay to said first party a royalty of seven percent of all of the oil and gas produced on said lands, or seven per cent of the receipts from the sale thereof, at the option of the first party. Said royalties are to be paid on the 15th of each and every month following the month in which produced;

"This contract shall cover the entire term of first party's lease of twenty years and all extensions thereof, less thirty days;

"Said second parties agree and are hereby bound unto first party to pay to first party an advance royalty of $300 per month, same to be paid as follows: $300 upon the execution of this contract and $300 on the 25th day of each and every month thereafter until such time as first party's royalties from the sale of oil or gas begin to exceed $300 per month, after which time said royalties so advanced shall be deducted from the excess royalties of first party, over and above $300 per month, until all of said royalties so advanced have been refunded;

"Any and all advance royalties paid to first party by second parties shall not be refunded to second parties except as above specified;

"Second parties to furnish logs and data necessary in' making reports to the government.''

The above contract provides for monthly payments of $300 and the other contract for monthly payments of $675, and each covers different lands.

It is shown that pursuant to the provisions of said contracts defendants paid to plaintiff the monthly payments of $300 for the months of May, June, July and August, 1923, and the monthly payments of $675 for the months of May, June and July, 1923, and failed to pay any monthly payments thereafter falling due, and at all times failed to comply with any and all of the terms and conditions of said contracts, except the above-mentioned payments of monthly advance royalties.

In action No. 6695 (Kern County action), commenced July 3, 1924, plaintiff sought to recover under the contract providing for $300 monthly payments the sum of $3,000, covering the ten months beginning with September, 1923, and ending with June, 1924, and under the contract providing for $675 monthly payments the sum of $7,425 covering the eleven months beginning with August, 1923, and ending with June, 1924.

In action No. 6694 (Los Angeles County action), commenced April 29, 1925, plaintiff sought to recover under the contract providing for $300 monthly payments the sum of $3,000 covering the ten months beginning with July, 1924, and ending with March, 1925, and under the contract providing for $675 monthly payments the sum of $6,750 covering the same ten months, and as a third cause of action

sought to recover the total amount under a common count in *assumpsit* for money in the principal sum of $9,750, and $425.45 interest; and by supplemental complaint filed March 5, 1926, sought to recover an additional $975 covering the monthly payment falling due May 25, 1925, $300 under one contract and $675 under the other contract. Subsequent to the commencement of said actions, to wit, on June 15, 1925, plaintiff caused written notice to be served on defendants notifying them that all their rights under the two contracts involved herein "are terminated and ended from and after the date of service" of the notice and all their rights to the lands involved are terminated and ended. Then follows a recital of the reasons for the termination, involving various breaches of the terms of the contracts, and the statement:

"You are further notified that this notice is not, and shall not be construed to be a waiver of payment of any advance royalty which has fallen due by the terms of said contracts prior to the date of service on you of this notice, but it is expressly stated herein that no demands will be made by the undersigned for payment of advance royalties under the said contracts or either of them except for the payment of advance royalties which have fallen due under said contracts prior to the date of service on you of this notice.

"You are further notified that nothing in this notice shall be construed to be a waiver or abandonment by the undersigned of any claim for damages arising by reason of your breach of the said contract."

Under their amended answer defendants urged several defenses, none of which was sustained by the trial court, the last one of which appears to be the only one seriously urged on these appeals, and is as follows: "That by service of notice of June 15, 1925, and defendants' assent thereto, the defendants were released from liability under the contracts for payment of previously as well as subsequently accruing installments of rental."

It is the contention of defendants that by the service on defendants of said notice under date of June 15, 1925, plaintiff rescinded the contracts and that the legal effect of such rescission is that from the time of such rescission the contracts became in legal effect void *ab initio*.

Counsel for defendants concede that it is the rule regarding ordinary leases for ordinary rental for use and occupa-

tion of the ground, that a rescission by the landlord for breach of condition terminates all future liability for rent, but has no effect upon liability for the rentals already accrued at the date of cancellation, and contend that the contracts here involved are not leases, but are in legal effect conditional contracts of sale where the installments are paid, not as rental but as the purchase price for the thing being sold, and that a rescission or cancellation relates back to the beginning of the contract and cancels installments accrued but unpaid, as well as all future installments.

In other words, defendants ignore the terms of the surrender or termination and seek to invoke a forfeiture of plaintiff's right to recover previously accruing installments on the theory that the relation between the parties was that of vendor and vendee, and not lessor and lessee; and by applying the rules applicable to an ordinary conditional and installments sale of realty.

From the undisputed facts that solemn contracts in writing were entered into by and between the parties by the terms of which plaintiff grants to defendants certain rights and privileges, to wit, the exclusive right to drill for, produce and market oil and gas from certain described lands, in consideration of which defendants agree to perform certain conditions among which they agree to pay monthly to plaintiff certain sums therein set forth; that defendants did meet said monthly payments for several months and then not only failed to make any further monthly payments, but failed to perform any of the other covenants agreed to be performed, eliminating from consideration the legal effect of said notice and acquiescence, it very clearly appears that at the time the notice was served upon defendants, under the express terms of the written contracts, defendants were indebted to plaintiff in the several sums sued for, and for which judgments were rendered, and if such rights are lost to plaintiff, it must result from the legal effect of the acts of the parties involved in the serving of said notice by plaintiff and the acquiescence in the notice and the demands of the notice by defendants.

Obviously, therefore, the real issue is one of construction and determination of the legal effect of such acts of the parties. ■ An executory contract may be rescinded, abandoned or terminated, either wholly or in part, by the

mutual consent of the respective parties at any stage of their performance. (6 Cal. Jur., sec. 230, p. 382; *Tompkins* v. *Davidow,* 27 Cal. App. 327 [149 Pac. 788].) ██ "Termination" or "cancellation" of a conditional contract means to abrogate so much of it as remains unperformed, . . . doing away with an existing agreement upon the terms and with the consequences mentioned in the writing, and different from "rescission," which means to restore the parties to their former position.

*Young* v. *Flickinger,* 75 Cal. App. 171, 174 [242 Pac. 516]; *Winton* v. *Spring,* 18 Cal. 451. ██ A reservation of rights contained in a mutual agreement of termination of future rights and obligations under an executory contract is binding upon the parties to it. (*Winton* v. *Spring, supra,* 451; *Young* v. *Flickinger, supra,* 174; *Tuso* v. *Green,* 194 Cal. 582 [229 Pac. 327]; *McCreary* v. *Day,* 119 N. Y. 1 [16 Am. St. Rep. 793, 6 L. R. A. 503, 23 N. E. 198]; *Kromer* v. *Heim,* 75 N. Y. 574 [31 Am. Rep. 491].)

What did the parties mean by the transaction consisting of plaintiff's serving of the notice to terminate or cancel the contracts and the acquiescence of defendants in said notice and the demands contained therein?

When ascertained, that intention must prevail.

██ It very clearly appears that instead of said notice and acquiescence constituting a rescission of said contracts, and rendering them void *ab initio,* as contended by defendants, they constituted an agreement—a meeting of the minds of the parties—in complete settlement of the subject matter of the contracts, in accordance with the express reservations, terms and conditions set forth therein, under which the rights and obligations of defendants thereafter were to be terminated, manifested what the intention of the parties was in respect thereto and expressly reserved unto plaintiff the right of payment and recovery for the advance royalties which had accrued and matured up to the time of service of the notice and released defendants from all their obligation of payment of all advance royalties accruing under the terms of the contracts subsequent to the time of the service of the notice.

In short, the agreement resulting from said notice and acquiescence did not terminate the contracts, or plaintiff's rights that were expressly reserved thereby, but merely terminated the rights of defendants to the possession and use

of the premises and released them from their obligations to pay the advance royalties from and after the date of service of said notice of termination.

What we have said disposes of all points urged by defendants. Having disposed of both cases upon their merits, and having found it necessary to affirm the judgments of the trial courts, makes it unnecessary to decide plaintiff's motion for dismissal and defendants' request for diminution of record.

The judgments are, and each is, affirmed.

Tyler, P. J., and Cashin, J., concurred.

A petition by appellant to have these causes heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on June 24, 1929.

All the Justices concurred.