[No. F050094. Fifth Dist. June 26, 2007.]

NMSBPCSLDHB, Plaintiff and Appellant, v.
COUNTY OF FRESNO, Defendant and Respondent.

**COUNSEL**

Marks, Golia & Finch, Davide Golia, Louis J. Blum; Dowling, Aaron & Keeler and Lynne Thaxter Brown for Plaintiff and Appellant.

McCormick, Barstow, Sheppard, Wayte & Carruth, Marshall C. Whitney, Timothy J. Buchanan; Dennis A. Marshall, County Counsel, and Kevin B. Briggs, Chief Deputy County Counsel, for Defendant and Respondent.

**OPINION**

**CORNELL, J.**—Nmsbpcsldhb (NMS) contracted with the County of Fresno (the County) to sell a parcel of unimproved land to the County. NMS sued the County for breach of contract and rescission. The trial court dismissed the claim for breach of contract and denied NMS's demand for a jury on the claim for rescission. The trial court then found that NMS had no valid ground for rescission of the contract.

The only issue raised by NMS here is whether the trial court erred in striking its jury demand. If NMS is correct, we would reverse the judgment, regardless of whether the trial court's ruling on the merits of the rescission claim was or was not correct. As we shall explain, however, we agree with the trial court that the gist of NMS's rescission action was equitable rather than legal, and that NMS was not entitled to a jury trial. This is so because of our holding that a rescission action is an action in equity and not an action at law when the recovery sought by plaintiff (here, a money judgment) consists entirely of something other than the consideration paid by plaintiff (here, land). We will therefore affirm the judgment.

## FACTUAL AND PROCEDURAL SUMMARY

NMS's first amended complaint contained causes of action for rescission, breach of contract and injunctive relief. The pleading alleged that on September 11, 2001, NMS, as seller, and the County, as buyer, entered into a contract pursuant to which NMS sold to the County a three-acre parcel of unimproved land (the Property) for a price "not to exceed $651,900.00." The County intended to build the Woodward Park Library (the Library) on the site.

Under the terms of the contract, "NMS's obligations to perform . . . were conditioned upon the County's fulfillment of its promise to ensure the architectural compatibility between the Woodward Park Library . . . , which the County intends to build on the Property, and NMS's development adjacent to the Property, so that the Library would maintain architectural continuity with the adjacent property, which was being developed by NMS." The County "knew its Agreement to construct a Library that was architecturally compatible to NMS's adjacent development was a material term of the Agreement and at no time prior to the execution of the Agreement did the County object to the architecture of NMS's adjacent development nor indicate to NMS that it intended to construct a Library that was not architecturally compatible with NMS's adjacent development."

In May of 2002 the County's board of supervisors approved a design for the Library that was "wholly incompatible with the architecture of NMS's adjacent development." NMS alleged that the County's failure to provide for a library design architecturally compatible with NMS's adjacent development was a material failure of consideration, entitling NMS to rescind the contract. (See Civ. Code, § 1689, subd. (b)(2).)[1] NMS further alleged that the County "made representations to NMS that, if NMS sold the County the Property, it would build a Library architecturally compatible with NMS's development of land adjacent to the Property," that the County's representations "were false," and that these false representations entitled NMS to rescind the contract. (See *id.,* subd. (b)(1).)

About three months before trial, NMS dismissed its request for injunctive relief, which had sought to stop construction of the Library with the design approved by the County. Apparently, by this time the Library already had been built.

At the outset of the trial, the court disposed of NMS's breach of contract cause of action by way of an in limine ruling, which is not contested in this

---

[1] All further statutory references are to the Civil Code unless otherwise specified.

appeal. The trial court then ruled that the only remaining portion of NMS's case, its cause of action for rescission, was equitable rather than legal and struck NMS's jury demand. Notably, NMS was not seeking a return of the Property and apparently made no offer to return to the County the money NMS had received for the land it had conveyed to the County. Rather, NMS sought a measure of monetary recovery representing profit it contended it would have made if it had kept the Property, constructed an office building on it, rented out the commercial property for 30 years, and then sold the Property. Its expert witness at trial estimated this amount to be $9.79 million.

At the conclusion of the court trial, the court found "[t]he evidence establishes that the Library design is architecturally compatible with plaintiff's adjacent project." The court found that there was no ground for rescission of the contract because "[t]here was no failure of consideration nor did defendant commit fraud against plaintiff. (CC § 1689(b)(1)(2).)"

## DISCUSSION

### *The Right to a Jury Trial*

■ Article 1, section 16 of the California Constitution provides in pertinent part that "[t]rial by jury is an inviolate right and shall be secured to all, but in a civil cause three-fourths of the jury may render a verdict." In spite of the expansive language of this constitutional provision, case law has long held that not all litigants are entitled to a jury trial. "[T]he right so guaranteed . . . is the right as it existed at common law in 1850, when the Constitution was first adopted, 'and what that right is, is a purely historical question, a fact which is to be ascertained like any other social, political or legal fact.' [Citations.]" (*C & K Engineering Contractors v. Amber Steel Co.* (1978) 23 Cal.3d 1, 8 [151 Cal.Rptr. 323, 587 P.2d 1136] (*C & K Engineering*); accord, *People v. One 1941 Chevrolet Coupe* (1951) 37 Cal.2d 283, 286–287 [231 P.2d 832].) "As a general proposition, '[T]he jury trial is a matter of right in a civil action at law, but not in equity.' [Citations.]" (*C & K Engineering*, at p. 8; accord, *Abbott v. City of Los Angeles* (1958) 50 Cal.2d 438, 462 [326 P.2d 484]; *Southern Pac. Transportation Co. v. Superior Court* (1976) 58 Cal.App.3d 433, 436 [129 Cal.Rptr. 912].)

■ The *C & K Engineering* case explained the difference between an action at law and an action in equity as follows: "As we stated in *People v. One 1941 Chevrolet Coupe, supra*, 37 Cal.2d 283, ' "If the action has to deal with ordinary common-law rights cognizable in courts of law, it is to that extent an action at law. In determining whether the action was one triable by

a jury at common law, the court is not bound by the form of the action but rather by the nature of the rights involved and the facts of the particular case—the *gist* of the action. A jury trial must be granted where the *gist* of the action is legal, where the action is in reality cognizable at law." ' [Citation.] On the other hand, if the action is essentially one in equity and the relief sought 'depends upon the application of equitable doctrines,' the parties are not entitled to a jury trial. [Citations.] Although we have said that 'the legal or equitable nature of a cause of action ordinarily is determined by the mode of relief to be afforded' [citation], the prayer for relief in a particular case is not conclusive [citations]. Thus, 'The fact that damages is one of a full range of possible remedies does not guarantee . . . the right to a jury . . . .' [Citation.]" (*C & K Engineering, supra*, 23 Cal.3d at p. 9.)

### Rescission

■ Section 1688 provides that "A contract is extinguished by its rescission." " '[A] party to a contract cannot rescind at his pleasure, but only for some one or more of the causes enumerated in section 1689 of the Civil Code.' " (*McCall v. Superior Court* (1934) 1 Cal.2d 527, 538 [36 P.2d 642].)[2] The term "rescission" is not defined in the Civil Code. "Rescission" means to "restore the parties to their former position." (*Young v. Flickinger* (1925) 75 Cal.App. 171, 174 [242 P. 516]; accord, *Sanborn v. Ballanfonte* (1929) 98 Cal.App. 482, 488 [277 P. 152].) "Rescission" is a "retroactive termination" of a contract, as compared to "cancellation," which is a "prospective termination." (*Barrera v. State Farm Mut. Automobile Ins. Co.* (1969) 71 Cal.2d 659, 663, fn. 3 [79 Cal.Rptr. 106, 456 P.2d 674].) "The consequence of rescission is not only the termination of further liability, but also the restoration of the

[2] Section 1689 states:

"(a) A contract may be rescinded if all the parties thereto consent.

"(b) A party to a contract may rescind the contract in the following cases:

"(1) If the consent of the party rescinding, or of any party jointly contracting with him, was given by mistake, or obtained through duress, menace, fraud, or undue influence, exercised by or with the connivance of the party as to whom he rescinds, or of any other party to the contract jointly interested with such party.

"(2) If the consideration for the obligation of the rescinding party fails, in whole or in part, through the fault of the party as to whom he rescinds.

"(3) If the consideration for the obligation of the rescinding party becomes entirely void from any cause.

"(4) If the consideration for the obligation of the rescinding party, before it is rendered to him, fails in a material respect from any cause.

"(5) If the contract is unlawful for causes which do not appear in its terms or conditions, and the parties are not equally at fault.

"(6) If the public interest will be prejudiced by permitting the contract to stand.

"(7) Under the circumstances provided for in Sections 39, 1533, 1566, 1785, 1789, 1930 and 2314 of this code, Section 2470 of the Corporations Code, Sections 331, 338, 359, 447, 1904 and 2030 of the Insurance Code or any other statute providing for rescission."

parties to their former positions by requiring each to return whatever consideration has been received." (*Imperial Casualty & Indemnity Co. v. Sogomonian* (1988) 198 Cal.App.3d 169, 184 [243 Cal.Rptr. 639]; accord, *Tippett v. Terich* (1995) 37 Cal.App.4th 1517, 1535 [44 Cal.Rptr.2d 862], disapproved on another ground in *Cortez v. Purolator Air Filtration Products Co.* (2000) 23 Cal.4th 163, 175–178 [96 Cal.Rptr.2d 518, 999 P.2d 706].)

We must determine whether NMS's rescission action is an action at law or an action in equity. NMS applies the grounds of fraud and failure of consideration set forth in subdivision (b)(1) and (2) of section 1689. NMS relies on the more expansive definition of "rescission" found in 1 Witkin, Summary of California Law (10th ed. 2005) Contracts, section 926, page 1023: "Rescission not only terminates further liability but restores the parties to their former position by requiring each to return whatever he or she received as consideration under the contract, or, where specific restoration cannot be had, its value. [Citations.]"

In *Swan v. Talbot* (1907) 152 Cal. 142 [94 P. 238], for example, the plaintiff sold some "personal property" (not otherwise described in the opinion) worth $21,949.86 to the defendant for only $10,604.32 while the plaintiff "was so intoxicated as to be incapable of transacting business." (*Id.* at p. 143.) The plaintiff later successfully sued for rescission, but by the time of the judgment the defendant already had sold the personal property to someone else. The trial court awarded the plaintiff the $11,345.54 difference between the $10,604.32 he already had received and the $21,949.86 value of the personal property. The California Supreme Court found no error.

"The action is in form of a simple action for a rescission of the bill of sale and the restoration to plaintiff of the property of which defendant took possession under the instrument. As has been said, the court found for a rescission of the instrument, but found also that it was impracticable to decree a restoration and return of the property, and it proceeded thereupon to state and settle an account between the parties. Objection is made to this by the appellant upon the ground that the complaint nowhere asks for such relief. But the proceeding adopted by the court was wholly consonant with the principle that where equity has acquired jurisdiction for one purpose it will retain that jurisdiction to the final adjustment of all differences between the parties arising from the cause of action presented. It is, indeed, the duty of a court of equity, when all the parties to the controversy are before it, to adjust the rights of all and leave nothing open for further litigation. [Citations.] It is no objection to the relief which is thus decreed in an equitable action that the court should finally determine that the necessary and appropriate remedy

should take the form of a personal monetary judgment. [Citation.] The court in this case was therefore justified in determining the value of the properties conveyed by Swan, the amount of Swan's indebtedness to Talbot, and in decreeing a personal judgment for the difference." (*Swan v. Talbot, supra*, 152 Cal. at pp. 146–147.)

### Legal Rescission and Equitable Rescission

The parties do agree on some points, even though they disagree on the issue of whether this particular action by NMS is legal (as NMS contends) or equitable (as the County contends). The points of agreement are aptly summarized in *Runyan v. Pacific Air Industries, Inc.* (1970) 2 Cal.3d 304 [85 Cal.Rptr. 138, 466 P.2d 682] (*Runyan*) as follows:

"In California prior to 1961 there were two methods provided for in the Civil Code by which a party entitled to rescind could obtain rescissionary relief. The first, found in sections 1688–1691, specified certain instances in which a party to a contract might rescind it and provided that such rescission could be accomplished by the rescinding party by giving notice of the rescission and offering to restore everything of value which he had received. This method contemplated a rescission 'by the individual act of one of the parties to the contract' and has been referred to as a unilateral rescission. [Citation.] Having rescinded the contract by his own act, the rescinding party then brought an action to enforce the out-of-court rescission. [Citation.][3] Such action was considered to be one at law brought on the implied promise on the part of the nonrescinding party to repay or return the consideration received. [Citation.] 'In reality, it is an action in which the law, in order to prevent the unjust enrichment of defendants from the property of plaintiff, itself implies a promise to repay the sum demanded. In other words, it is an action in *assumpsit* upon a promise implied by law.' [Citation.]

"The second method by which a party could obtain rescissionary relief was the action for a judicial rescission. [Citation.] Former sections 3406–3408 provided that a rescission could be adjudged on any of the grounds specified in section 1689 together with two additional grounds. Unlike the method of unilateral rescission, however, this method was viewed as an action for specific judicial relief for the wrong giving rise to the right of rescission, and was deemed equitable in nature. [Citations.]

---

[3] This unilateral rescission or out-of-court rescission procedure is also sometimes called " 'rescission in pais.' " (*Resure, Inc. v. Superior Court* (1996) 42 Cal.App.4th 156, 165 [49 Cal.Rptr.2d 354]; see *McCall v. Superior Court, supra*, 1 Cal.2d at p. 535.) "In pais" means literally "in the country," as opposed to "in court." (Black's Law Dict. (8th ed. 2004) p. 806, col. 2.)

"In short, the two procedures which we have described contemplated 'two types of action for rescissionary relief'—the first an 'action to enforce a rescission' and the second an 'action to obtain a rescission.' [Citation.] Significant substantive and procedural differences existed between these two methods for obtaining rescissionary relief. The right to a jury trial, the applicable statute of limitations, the availability of the provisional remedy of attachment and the possibility of joinder of other claims all depended upon which of these two methods the plaintiff elected to use in seeking rescissionary relief. The result was a body of law which was 'unnecessarily complex and confusing to both courts and attorneys, to say nothing of laymen.' [Citation.]

"As previously mentioned . . . the Legislature made several changes in these procedures in 1961. Prominent among these was the addition of section 1692 . . . and the repeal of sections 3406–3408. 'This legislation, in effect, abolished the action to obtain court rescission and left only an action to obtain relief based upon a party effected rescission.' [Citation.] [Citation.] As the Law Revision Report indicates, the purpose of the statutory changes was to eliminate the confusing and complex duality of rescission procedures by 'providing a single, simple procedure to be followed in all situations where rescissionary relief is sought.' [Citation.]" (*Runyan, supra,* 2 Cal.3d at pp. 311–313, fn. omitted.)

■ The parties' disagreement is this. NMS contends that because its rescission action seeks recovery of only money, it is an action at law. The County contends that because what NMS seeks to recover is something other than the consideration NMS gave under the contract (i.e., something other than the land NMS conveyed to the County), the action is equitable in nature. We think the County has the better argument.

"Under pre-1961 law . . . an action at law to enforce an out-of court rescission was, by its very nature, invariably restricted to the recovery of the consideration given by the rescinding party." (*Runyan, supra,* 2 Cal.3d at p. 314.) Here, NMS is seeking something other than the land it conveyed to the County. NMS contends that the 1961 changes to the law of rescission give a rescinding plaintiff the right to a jury trial whenever that plaintiff seeks only a monetary recovery. We do not agree.

*Runyan* points out that the 1961 changes to the rescission law were "intended by the Legislature to effectuate the recommendations of the Law Revision Commission," including a recommendation appearing on page D-7 of the California Law Revision Commission's Recommendations and Study

Relating to Rescission of Contracts (1960) 3 California Law Revision Commission Report (Sept. 1961) pages D-5 to D-35 (Law Revision Report). (*Runyan, supra*, 2 Cal.3d at p. 313.) That particular recommendation states: "The rescission statutes should make plain that, after rescinding a contract, a party may seek any form of relief warranted under the circumstances, whether legal or equitable. As all such actions will be to *enforce* a rescission, the right of the parties to a jury and the court in which the action must be brought will be determined by the nature of the substantive relief requested and not by the form of the complaint. For example, if a bare money judgment is sought, a justice court will have jurisdiction in appropriate cases, and the plaintiff may not convert the action into an equity action and thus deprive the justice court of jurisdiction merely by a prayer for rescission. The statute should also make plain that the court may grant any other relief that is appropriate under the circumstances if it develops at the trial that the plaintiff has mistaken his remedy and the purported rescission was not effective." (Law Revision Rep., at p. D-7.)

■ We do not read this language as meaning that any rescission action that seeks a money judgment must be deemed an action at law, even if the plaintiff paid no money as consideration for the contract. Rather, we read this language as saying that a rescinding plaintiff who does seek to recover money paid as consideration for a contract may not deprive the defendant of a jury trial merely by framing the complaint as an action in equity asking for judicial rescission. As the *Runyan* court stated in discussing the 1961 changes, "[w]e perceive in this fusing of the two former rescission procedures no intention on the part of the Legislature to disturb, much less eradicate, substantive differences theretofore underlying such procedures." (*Runyan, supra*, 2 Cal.3d at p. 313.) To state this a bit differently, if a rescission action seeking to recover something other than the consideration paid was an equitable action prior to the 1961 amendments, then it is an equitable action today. And that is our conclusion in this case.

*Authorities Cited by NMS*

NMS cites a number of cases in support of its argument, but none of them say a rescission action that seeks to recover something other than the consideration paid by the rescinding plaintiff is an action at law.[4]

---

[4] This is not a case in which a plaintiff seeks to recover incidental damages, in addition to a return of the consideration paid. (See, e.g., § 1692; *Runyan, supra*, 2 Cal.3d at pp. 314–318; *Paularena v. Superior Court* (1965) 231 Cal.App.2d 906 [42 Cal.Rptr. 366].) Here, we have a plaintiff who pays consideration in one form (land) and who seeks in rescission the purported value of that consideration in an entirely different form (money).

In *Philpott v. Superior Court* (1934) 1 Cal.2d 512 [36 P.2d 635], the plaintiff paid $625 to the defendant for bank stock that turned out to be worthless. The plaintiff used the "unilateral" or "out-of-court" rescission procedure (see *Runyan, supra,* 2 Cal.3d at pp. 311–312) to recover the $625, and this was held to be an action at law. (*Philpott,* at p. 526.)

In *Davis v. Security-First Nat. Bank* (1934) 1 Cal.2d 541 [36 P.2d 649], the plaintiff used the out-of-court rescission procedure to rescind two contracts for the purchase of land. The plaintiff had been induced by fraudulent representations of the seller to enter into the contracts. Plaintiff sought to recover the payments she had made on the two lots. The trial court denied the plaintiff a jury trial "upon the ground that the cause of action was equitable and not legal." (*Id.* at p. 542.) The California Supreme Court reversed, stating: "[W]e have no hesitancy in declaring that the facts here alleged state an action at law." (*Ibid.*)

*Paularena v. Superior Court, supra,* 231 Cal.App.2d 906 is a post-1961 case similar to *Davis.* In *Paularena* the trial court refused to allow the rescinding plaintiffs a jury trial, and the Court of Appeal issued a writ directing the trial court to allow trial by jury. In addition to the plaintiffs' recovery of the amounts they had paid for the properties, the case presented issues of whether, and in what amounts, the plaintiffs also should recover for improvements made by them upon the properties and whether the defendant should be entitled to an offset for the reasonable value of the use of the properties by the plaintiffs while the plaintiffs were in possession. "We conclude that any ancillary relief of an equitable nature to be afforded the parties under the cause of action based upon the subject rescission is merely incidental to the recovery of a money judgment; that the relief sought is legal and not equitable; and that plaintiffs are entitled to a jury trial as a matter of right." (*Paularena,* at p. 914.)

Here, however, all of the relief sought is something other than the consideration paid by NMS, that is, something other than the land NMS conveyed to the County. There is no ancillary relief of an equitable nature. Rather, the entire relief sought is equitable.

In *Masero v. Bessolo* (1927) 87 Cal.App. 262 [262 P. 61], the plaintiffs conveyed real property worth $10,000 to the defendants. The plaintiffs were to receive a share of the profits from the business conducted by the defendants on the property. The plaintiffs received nothing and sued for rescission. The trial court granted the defendants a nonsuit, in part on the ground that lack of consideration was not a sufficient ground for rescission of a conveyance of real property. The Court of Appeal reversed, stating: "This being an equity case, the plaintiffs were entitled to the relief made by their

pleadings and the testimony, irrespective of whether they were correct or incorrect in their views as to the relief to which they were entitled." (*Id.* at p. 266.)

The court noted that the plaintiffs still could recover monetary relief, and that "the testimony showing that property worth $10,000 had been transferred by the plaintiffs to the defendant without consideration being paid therefor, the inference, if not necessarily, at least very fairly, and we may say strongly arises that the plaintiffs have suffered damages in just that sum." (*Masero v. Bessolo, supra,* 87 Cal.App. 262 at p. 269.) The Court of Appeal ordered the trial court to "allow the plaintiffs . . . to present all the issues which may be properly tendered and tried in this case to the intent that the plaintiffs may be awarded such relief as may be consonant with equity and justice." (*Id.* at pp. 271–272.) We see nothing in this case that supports NMS's argument that a rescission action in which the plaintiff seeks a monetary recovery in place of the nonmonetary consideration actually paid by the plaintiff must be deemed a legal action and not an equitable one.

*Ripling v. Superior Court* (1952) 112 Cal.App.2d 399 [247 P.2d 117] and *Raedeke v. Gibraltar Sav. & Loan Assn.* (1974) 10 Cal.3d 665 [111 Cal.Rptr. 693, 517 P.2d 1157], also cited by NMS, do not involve rescission at all. *Jensen v. Harry H. Culver & Co.* (1932) 127 Cal.App. Supp. 783 [15 P.2d 907] held that an action to enforce an out-of-court rescission in which the plaintiff had been fraudulently induced to pay $2,000 to the defendant was an action at law and not in equity. Again, the plaintiff in *Jensen* sought merely to recover the $2,000 he had paid.

### The Snelson[5] Case

The trial court relied heavily on *Snelson*. In *Snelson* the plaintiffs were buyers of residential real property who brought a successful rescission action against the sellers. The sellers had represented that the lot was "cut," but the lot "contained fill material," and after heavy rains "a large landslide occurred on the edge of" the lot. (*Snelson, supra,* 5 Cal.App.3d at p. 250.) The case was tried without a jury and the plaintiffs were awarded $9,088.50, consisting of a return of their $4,800 downpayment, plus an additional $4,288.50 for improvements the plaintiffs had made to the property.

The Court of Appeal rejected various arguments raised on appeal by the defendants and noted in its opinion that the plaintiffs appeared to be entitled to even more incidental damages, including the monthly payments they had

---

[5] *Snelson v. Ondulando Highlands Corp.* (1970) 5 Cal.App.3d 243 [84 Cal.Rptr. 800] (*Snelson*).

made on the property and $467.05 in closing costs. It reversed the judgment so that the trial court could take additional evidence and "modify its findings, conclusions and judgment to conform with the views set forth in the opinion . . . ." (*Snelson, supra,* 5 Cal.App.3d at p. 258.) The defendants then petitioned for rehearing and argued that they (or at least some of them) were entitled to a jury trial.

The Court of Appeal amended its opinion by adding to it and explaining why it was denying a rehearing. The *Snelson* court gave two reasons why the defendants were not entitled to a jury trial. One was that "[o]ne may not permit an issue to be tried as an equity matter in the trial court without objection and then claim on appeal that it should have been tried as a law question on the legal side of the court." (*Snelson, supra,* 5 Cal.App.3d at p. 259.)

The *Snelson* court's other stated reason for denying rehearing played a much larger role in the case here. That other reason was that "[i]n marked contrast to the factual situation in *Paularena v. Superior Court*[, *supra,*] 231 Cal.App.2d 906 [42 Cal.Rptr. 366], the gravamen of the cause of action before the trial court and this court was primarily a proceeding in equity to adjudicate a rescission in the face of defendants' denial of the existence of a basis for rescission. As pointed out in the principal opinion, the awarding of damages was ancillary to the equitable disposition of the cause." (*Snelson, supra,* 5 Cal.App.3d at p. 259.) The trial court in the case before us relied on this language to conclude that because the County denied the existence of any basis for rescission of the contract, the existence (or not) of a ground for rescission was an issue to be tried, and the case therefore was an action in equity.

NMS contends this aspect of *Snelson* was decided wrongly. It argues that *Snelson* in effect attempts to restore the judicial rescission procedure abolished by the 1961 amendments. Under *Snelson,* argues NMS, any defendant who disputed a plaintiff's assertion of a right to rescind could be denied a jury trial (even in an action seeking to recover money paid) on the theory that this denial automatically made the action an equitable action. While we are inclined to agree with NMS on this issue, our agreement does not help NMS because a ruling that is correct will not be reversed simply because it may have been based on an incorrect reason. (*Davey v. Southern Pacific Co.* (1897) 116 Cal. 325, 329–330 [48 P. 117].) As we have stated, we conclude that the action is equitable because it seeks something other than a return of the consideration given by NMS.

## DISPOSITION

The judgment is affirmed. The County shall recover its costs on appeal.

Wiseman, Acting P. J., and Dawson, J., concurred.

A petition for a rehearing was denied July 18, 2007, and appellant's petition for review by the Supreme Court was denied September 12, 2007, S155182. Werdegar, J., was of the opinion that the petition should be granted.